76 F.3d 287
 Fed. Sec. L. Rep. P 99,047, RICO Bus.Disp.Guide 8987,
96 Cal. Daily Op. Serv. 909,
96 Daily Journal D.A.R. 1453
 BUTTE MINING PLC; Tzarina & Travona Mining Corp.; Central
Butte Mining Corp.; North Butte Mining Company,
Plaintiffs-Appellants,
v.
Clive J. SMITH; Kerry Harmanus; Robertson Group PLC;
Montana Mining Properties, Inc.; Dennis Washington;
Herbert Roy Bichan; K. Malcolm Clews; D.C. Wilkinson;
Byatt, Michau & Smart; Jay Mineral Services Limited; Ernst
& Young International; Ernst & Young, a U.S. partnership,
et al.; Milton Datsopoulos; Black Rock Mining Ltd; Blue
Bird Mining Investments; East Ridge Mining Co.; Eureka
Mining Co.; Goldbrick Mining Co.; Original Butte Mining
Co.; Oro Fino Placer Mining Corp., et al.; H.R. Bichan;
and J.T. Clarke, Defendants-Appellees.
 No. 95-35198.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided Feb. 8, 1996.
 
 William A. Rossbach, Rossbach & Whiston, Missoula, Montana; Herbert Deutsch, Roy A. Heimlich, Deutsch and Frey, New York City; and Karl J. Englund, Englund Law Office, Missoula, Montana, for the plaintiffs-appellants.
 Joan E. Cook, Miller & Cook, Great Falls, Montana; and James Sabela, New York City, for defendant-appellee Clive J. Smith.
 Randy Cox, Boone, Karlberg & Haddon, Missoula, Montana, for defendant-appellee Kerry Harmanus.
 Thomas P. Sullivan, Jenner & Block, Chicago, Illinois; and John Stephenson, Jr., Jardine, Stephenson, Blewett and Weaver, Great Falls, Montana, for defendant-appellee Robertson Group PLC.
 R.D. Corette, Corette Pohlman Allen Black & Carlson, Butte, Montana for defendants-appellees Montana Mining Properties, Black Rock Mining Ltd., Blue Bird Mining Investments, East Ridge Mining Co., Eureka Mining Co., Goldbrick Mining Co., Original Butte Mining Co., Oro Fino Placer Mining Corp. et al.
 Ronald MacDonald, Missoula, Montana, for defendants-appellees Dennis Washington, Milton Datsopoulos.
 Maxon R. Davis, Cure, Borer and Davis, Great Falls, Montana, for defendants-appellees Herbert Roy Bichan, H.R. Bichan, and J.T. Clarke.
 David M. McLean, Knight, Dahood, McLean & Everett, Anacoda, Montana, for defendant-appellee K. Malcolm Clews.
 Maria Sorolis, Brant & Moore, Jacksonville, Florida, for defendant-appellee D.C. Wilkinson.
 Robert E. Sheridan, Lawrence F. Daly, Garlington, Lohn & Robinson, Missoula, Montana; and Lucy T. France, Missoula, Montana, for defendant-appellee Byatt, Michau & Smart.
 Edward G. Beaudette, Anacoda, Montana; and Stephen Vandrake, Brainerd, Maryland, for defendant-appellee Jay Mineral Services Limited.
 Kenneth R. Dyrud, Richard F. Gallagher, Church, Harris, Johnson & Williams, Great Falls, Montana; John Matson, New York City; and Thomas L. Riesenberg, Washington, D.C., for defendants-appellees Ernst & Young International and Ernst & Young, a United States partnership.
 Appeal from the United States District Court for the District of Montana; Paul G. Hatfield, District Judge, Presiding.
 Before: D.W. NELSON and NOONAN, Circuit Judges, TANNER, District Judge*.
 NOONAN, Circuit Judge:
 
 
 1
 Butte Mining PLC (Butte), Tzarina & Travona Mining Corporation, Central Butte Mining Corporation, and North Butte Mining Company, (collectively the Plaintiffs) brought suit for securities fraud, RICO violations and various common law torts against the former promoters and directors of Butte and related others (the Defendants). The district court dismissed the complaint for lack of jurisdiction. The case requires the application of principles governing the extraterritorial reach of the securities law and of RICO in connection with frauds perpetrated abroad. We affirm the judgment of the district court.
 
 THE COMPLAINT
 
 2
 As the case was decided on the allegations in the complaint, and as the Plaintiffs did not request the opportunity to amend the complaint, the complaint's allegations are critical. For the purposes of this appeal only, we take the allegations to be true. We give neither support nor credence to the allegations except for this very limited purpose. The allegations are as follows:
 
 
 3
 The Promoter Defendants are Clive J. Smith, a citizen and resident of England; Laith Reynolds, a citizen of Australia and resident of Canada; Kerry Harmanus, a citizen of Australia, and the Robertson Group PLC and its subsidiaries, United Kingdom entities (collectively "the Promoters").
 
 
 4
 In 1986 the Promoters formed Montana Mining Properties Inc., a Montana corporation, to be the agent for a public company yet to-be-formed and to purchase and lease certain mining properties and equipment in Montana. In July 1987 this company purchased these properties in Montana from Defendant Dennis Washington, a resident of Montana, for cash and stock in a to-beformed company; in August 1987 the Promoters organized Butte Mining PLC, a British corporation. The directors and/or officers of this British corporation were the defendants Herbert Roy Bichan, John Thomas Clarke, George Alexander Manson, Clive Peter Kendall, K. Malcolm Clews, John J. Oitzinger, and D.C. Wilkinson (collectively "the Officer/Director Defendants").
 
 
 5
 Defendant C.J. Smith Life Interest Trust is a trust located on the island of Jersey in the United Kingdom and controlled by Defendant Smith. Defendants Fiona Smith and Helen Smith are daughters of Defendant Smith; their shares in Butte were held through corporations and trusts maintained in Jersey. Other Defendants are identified as providing professional services to the Control Group, among them: the London solicitors Byatt, Michau & Smart and their head, M.P. Byatt; Milton Datsopoulos, the Montana lawyer of Dennis Washington; Bryant & Co., Jersey accountants, and a member of that firm, Kelvin Myles; Jay Mineral Services Ltd., a British firm analyzing mineral properties; Arthur Young and its successor Ernst & Young International, accountants.
 
 
 6
 The Promoters, the Officer/Director Defendants, Montana Mining Properties, the Smith daughters and the Smith trust, plus Bryant & Co. and its partner, Myles, are characterized as the Control Group, which formed fifteen Jersey companies, identified as the Jersey Holding Companies or the Controlled Entities. The fifteen Controlled Entities owned fifteen Montana corporations organized by the Control Group and identified as the Montana Shell Corporations. The Montana Shell Corporations were assigned certain of the mining properties purchased from Dennis Washington by the Promoters.
 
 
 7
 Certain of these companies--notably Butte and three of the shell companies--have ceased to be under the control of the Control Group, and in their emancipated condition now bring suit against the Control Group and other Defendants for injuries allegedly done them. At the heart of this complaint is a stock swap between Butte and one of the Controlled Entities, through which the Promoters allegedly enriched themselves by fraud, as specified below.
 
 
 8
 Not long after the purchase of the mining properties from Washington and their assignment to the Montana Shell Corporations, the Control Group caused Butte to exchange 49,500,000 shares of its stock for the common stock of one of the Jersey Holding Companies, Tzarina & Travona Investments Ltd. The exchange disadvantaged Butte. Thereafter, in October 1987, Butte floated a public offering on the London Stock Exchange of 10,000,000 shares of its stock at pounds sterling 1 per share. The price was inflated. The public offering specified that no shares could be sold, "directly or indirectly, in the U.S. to or for the benefit of any North American Person"; however, some of the Butte shares that the Control Group had obtained went in partial payment to Washington for the property he had originally sold. The Promoters and the Controlled Entities retained seventy-five percent of the common stock of Butte. Viewed as part of a single scheme, the several acts of the Defendants enriched themselves and defrauded Butte by the Promoters' getting too much Butte stock, given the value of the mining properties bought from Washington and assigned to the shell owned by Tzarina & Travona Industries, Ltd. The Defendants further defrauded the public by the price set on the Butte stock in the public offering. Such are the Plaintiffs' principal allegations.
 
 
 9
 The Causes of Action. The complaint is 89 pages long as it appears in the excerpt of record. On the basis of the facts alleged, the Plaintiffs asserted twelve causes of action, consisting of Promoter Fraud; Corporate Waste; Breach of Fiduciary Duty; Usurpation of Corporate Opportunity; Conduct Creating a Constructive Trust; Common Law Fraud; Securities Fraud; Breach of Contract; Breach of the Covenant of Good Faith; Negligence; Negligent Misrepresentation; and RICO. Most of these counts could only be heard as pendant to a federal case. Only two of these counts asserted causes of action as to which jurisdiction conceivably lies in the federal district court in Montana. The securities fraud count in its entirety reads as follows:197. The stock of the plaintiffs were securities within the meaning of the 1934 Act.
 
 
 10
 198. The stock of the Montana Shell Corporations and of the Jersey Holding Companies were securities within the meaning of the 1934 Act.
 
 
 11
 199. In connection with the purchase and sale of the foregoing securities as heretofore alleged, the defendants named in this Count have committed violations of Section 10 of the 1934 Act and of Rule 10b-5 promulgated thereunder.
 
 
 12
 The RICO count asserts that the Defendants shared a common purpose and constituted an enterprise engaged in and affecting interstate commerce within the meaning of 18 U.S.C. § 1961(4); that they engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c). In particular, the Defendants are alleged to have performed two or more acts of securities fraud and to have used the United States mail and wire to "further their fraudulent scheme" in violation of 18 U.S.C. §§ 1341 and 1343.
 
 PROCEEDINGS
 
 13
 On May 20, 1992 the plaintiffs filed their complaint in the district of Montana. On January 31, 1995 the district court analyzed the jurisdictional basis of the complaint and concluded that it should be dismissed. In particular, the district court ruled that under "the effects test" a federal court had subject matter jurisdiction over fraudulent security transactions abroad if there were significant effects on domestic investors or the domestic securities market. Butte Mining PLC v. Smith, 876 F.Supp. 1153, 1162-64 (D.Mont.1995). The district court found no such effects alleged. The district court found the complaint also failed "the conduct test," by which jurisdiction might be based on substantial conduct within the United States. Id. at 1164-67. It concluded that all of the alleged fraud and all the alleged losses occurred when the securities transactions were consummated in the United Kingdom. Consequently, there was no basis for jurisdiction of the securities claim.
 
 
 14
 As to the RICO claim, the court noted the allegations that the mail and wire systems of the United States had been used to further the very securities fraud which the court held did not support United States jurisdiction. The court concluded that the general allegations of use of the mail and wire in relation to this scheme did not furnish a jurisdictional basis for RICO. It entered judgment dismissing the action.
 
 
 15
 The Plaintiffs appeal.
 
 ANALYSIS
 
 16
 The Securities Claim. The Plaintiffs assert that the Defendants violated "Section 10 of the 1934 Act and of Rule 10(b)-5 promulgated thereunder," i.e., the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. This claim is based on the exchange by the Promoters of their stock in Tzarina & Travona Investments, Ltd., one of the Jersey Holding Companies, for stock in Butte, a British corporation. The sale occurred outside the United States. Neither the purchaser nor the sellers were United States entities. The securities markets of the United States were neither used nor affected. The fraud alleged was a fraud committed by foreign individuals on a foreign corporation in a foreign country. Having failed to allege any effect on United States citizens or on United States securities markets, the Plaintiffs argue that the Defendants engaged in sufficient conduct in the United States upon which to establish jurisdiction. The principles governing jurisdiction in such a case are clearly set out in Grunenthal, GmbH. v. Hotz, 712 F.2d 421, 424-426 (9th Cir.1983).
 
 
 17
 First: We do not want to encourage persons who wish to defraud foreign securities purchasers or sellers to use the United States as a base of operations and, in effect, create a haven for such defrauders and manipulators. Id. at 424-425. In this case the base of operations of the alleged defrauders was London or Jersey. That the Defendants had, as assets underlying their stock, mining property in Montana did not make Montana their operational base. Personally, so far as the record shows, they avoided Montana like the plague, even while they are alleged to have played on a credulous public invoking whatever glamour still clings to mines in Montana. The United States is not a haven for the Defendants because except for Washington and his lawyer, they are not here and have not operated from here.
 
 
 18
 Second: It is "a fundamental purpose" of the securities laws to achieve "a high standard of business ethics in the securities industry." Id. at 425. We desire to encourage Americans involved as lawyers, accountants and underwriters in securities transactions to behave responsibly. Id. In this case no American underwriters are involved with the sale. The only American accountants alleged to have been involved are alleged to have given an opinion on the tax laws of the United States, a peripheral matter. The only American lawyer involved is alleged to have participated in the initial sale of the mining properties; he is not alleged to have engaged in or aided the fraudulent exchange of any stock with Butte. The non-involvement of American professionals makes this second reason for asserting jurisdiction irrelevant.
 
 
 19
 Third: We recognize that conduct that is "merely preparatory" to a fraud is not a basis for jurisdiction of the fraud to be vested in a court of the United States. Id. The Plaintiffs may or may not be correct in their allegations of fraud by the Promoters upon the British corporation, but according to their own allegations, the only conduct in Montana was preparatory to the securities fraud. It consisted in the purchase of land at a price the Plaintiffs do not allege to have been unfair; in the formation of a Montana corporation to buy the land and the formation of the shell companies to hold the mining interests acquired; in the payment of the Montana seller of the land, in part with the stock of Butte; and in communications using systems of communication in the United States. The Plaintiffs strenuously argue that we should consider these acts to be integrated with the fraud on Butte. The difficulty is that the alleged fraud on Butte was a transaction wholly outside the scope of our securities laws, involving alien sellers, an alien purchaser, and shares of stock in two United Kingdom companies. As far as the securities laws of the United States are concerned, the land transaction in Montana and the formation of the corporations in Montana were not acts of securities fraud. They merely, at most, were steps that the Defendants allegedly took before bringing off the transaction in the United Kingdom said to have defrauded Butte. These preparatory actions did not furnish the district court with jurisdiction. The alleged facts are sharply distinguishable from those alleged in Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc., 592 F.2d 409 (8th Cir.1979) where, although the plaintiff-purchaser was an Australian company, and one of the three seller-defendants was an Australian company, "the fraudulent scheme of nondisclosure was devised and completed in the United States." Id. at 420. The scheme alleged here was devised abroad and completed in the United Kingdom. We are not to be a haven for scoundrels; nor should we be a host for the world's victims of securities fraud. Vigilant and mature as our securities laws are, they are not to be invoked unless substantial steps in the perpetuation of the fraud were taken here or the criminal conduct engaged in affected our securities markets or American investors.
 
 
 20
 The RICO Claim. The allegations--very general in character--are that the mail and wire were used "to further" the securities fraud. The reasoning of the district court is persuasive. The securities fraud allegedly occurred completely outside the jurisdiction of the United States. There is no reason to extend the jurisdictional scope of RICO to make criminal the use of the mail and wire in the United States as part of an alleged fraud outside the United States. We do not suppose that Congress in enacting RICO had the purpose of punishing frauds by aliens abroad even if peripheral preparations were undertaken by them here. Once the securities fraud claim was dismissed the wire and mail fraud and RICO claims that related to this fraud had to be dismissed as well. Brannan v. Eisenstein, 804 F.2d 1041, 1046-47 (8th Cir.1986).
 
 
 21
 Plaintiffs argue vigorously that Republic of the Philippines v. Marcos, 862 F.2d 1355, 1358-59 (9th Cir.1988) (en banc), is a case in point in their favor. They misread Marcos. In that case the allegations were that the defendants, Ferdinand and Imelda Marcos, had fraudulently obtained over $11 million in the Philippines and that they had invested and concealed this fraudulently-obtained booty in the United States to the injury of the Republic of the Philippines. Their activity in the United States represented "a plan and a practice of getting the fruits of fraud out of the Philippines and into the assumed safety of the United States." Id. at 1358. The criminal conduct alleged had begun in the Philippines and had continued within the American jurisdiction. This criminal conduct was alleged to have affected the commerce of the United States, so both a "conduct test" and an "effects test" were fully satisfied by the allegations. The facts are not analogous to those here, where no basis for RICO jurisdiction is alleged.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation