[No. 37803-1-I.   Division One.   August 26, 1996.]

ITO INTERNATIONAL CORPORATION, ET AL., *Petitioners*,
v. PRESCOTT, INC., ET AL., *Defendants*, YUTAKA
NARITA, ET AL., *Respondents*.

*William Spurr* and *F. Frederic Fouad* (of counsel), for petitioners.

*Martin T. Crowder* and *Karr Tuttle Campbell, P.S.; John P. Erlick* and *Cozen & O'Connor*; and *Michael Himes* and *Perkins Coie*, for respondents.

COLEMAN, J. — Plaintiffs, a group of investors in a general partnership, ask this court to decide whether their investments are securities as a matter of law under the Washington State Securities Act (WSSA). Plaintiffs claim that the court erred in granting defendants partial summary judgment on this issue because plaintiffs' passivity in the partnership renders them subject to the WSSA's protections. We agree and reverse.

After the parties filed briefs but before oral argument, plaintiffs settled with a number of defendants. Plaintiffs did not, however, settle with the Inter Realty Planning Co. Ltd. (now known as SaYYou Corporations), defendants who did not file a brief in this case. Because all of the parties have not settled, we must address the merits and in doing so, we have considered all the briefs filed—including those of the prior defendants. We note that we make no determination regarding the actual liability of the prior or the remaining defendants under the WSSA.

Inter Co-op USA No. 1 (IC-1) was a Japanese *Kumiai*, the equivalent of a general partnership under U.S. law. Prescott, APC, and IRP formed IC-1 to own and operate a building in downtown Seattle. The *Kumiai* was made up of 40 equal shares.

APC, with offices in Tokyo and Seattle, and IRP marketed the sale of the building through direct mailings and advertising in Japan. Some of the offering material emanated in Seattle. Marketing activity also occurred in Seattle, including a cocktail party that some of the plaintiffs attended. Thirty-six of the 40 shares were sold to plaintiffs, mostly Japanese individuals and entities. One of those entities was Ito International Corporation, a Washington corporation run by Japanese individuals.

The purchasers sued the sellers, alleging securities fraud under the WSSA, among other claims. Plaintiffs moved for partial summary judgment, requesting that the court determine that the investments were "securities" as a matter of law.

Each plaintiff executed documents in connection with the purchase, including a partnership agreement, a special power of attorney, and a real estate purchase and sale agreement. Prescott guaranteed plaintiffs a 6.4 percent net rate of return for five years, and Prescott, IRP, and APC agreed to manage the partnership, with each receiving an income management fee. Any excess income would go into a reserve account, which was to be distributed to the partners upon sale.

The partnership agreement established a *rijikai*, the Japanese term for a Board of Directors, to consist of no less than two nor more than five directors. Article 24 provided that the Directors be selected by the partners at a general meeting but mandated that three of the initial Directors be officers of IRP, APC, and Prescott. Article 24 also provided, "As long as there is no dismissal or resignation, the Director's term of office is from the time of establishment of the partnership or the time of election of the Directors until the dissolution of the partnership."

Article 25 provided that a Director's term ended upon resignation or dismissal for cause, both of which required consent of two-thirds or more of the other directors. But Article 34 provided, "Despite the terms set forth in Article 26,[1] a Director can be dismissed by vote of two-thirds or more of all partners at a lawfully convened partners' general meeting."

Under the partnership agreement, the partners gave the Board of Directors the right to carry out business operations, borrow money, enter into agreements, dispose of assets including real estate, sign purchase and sale certificates, notes, mortgage certificates, and other documents.

The Special Power of Attorney provided the defendants with broad control over the management of the building:

Specifically included within this authority, and not by way of limitation thereon, shall be the power to make, execute, sign, seal, deliver, acknowledge, publish and file all documents and instruments of whatsoever kind and nature relating to:

(1) any agreement of general or limited partnership, the certificate thereof, any amendments thereto, and the admission or removal of any partners to such partnership;

(2) any instrument or document that may be required to be filed under the laws of any local, state, federal or foreign government, court or agency;

(3) any contract, deed, bill of sale, affidavit, loan application, loan commitment, evidence of debt, note, bond, mortgage, deed of trust, pledge, hypothecation, security agreement, financing statement, guarantee, certificate, statement, estoppel certificate, lease, assignment, license, permit, approval, receipt, release or any other agreement; and

(4) any demand, suit, recovery, collection, receipt or compromise of or for sums of money, debts, accounts, bequests,

---

[1]We believe that this is probably a typographical error, and Article 34 was meant to refer to Article 25. Article 26 discussed vacant director positions and provided that when the number of directors is less than two, a partners' general meeting shall be called to elect Directors.

interests, causes of action, dividends and annuities whatsoever as are now or shall hereafter accrue or become owing.

The special power of attorney coupled with an interest was irrevocable.

Richard Clotfelter, the chief executive officer of Prescott, testified that he believed the role of the Japanese investors to be similar to that of a limited partner, where the investors would have "no decisions in the say of the operation of the property" and no management responsibility.

Gary Carpenter, another officer of Prescott, testified that Prescott was responsible for the day-to-day operations of the building. Carpenter also testified that he believed that Japanese investors would be passive investors, which he defined as "an investor who provides an equity participation in ownership of real estate that has no day-to-day decision making processes nor do they interfere with the operation of the property. They invest their money in a set of parameters and basically . . . leave the rest to their managers and/or general managing partners."

On December 19, 1993, a general meeting of the majority of the IC-1 investors took place, at which time three of the Board of Directors were replaced by Japanese IC-1 investors. The investors voted that management of the building change from Prescott to Collier Co. and that funds controlled by APC were to be transferred according to the instructions of the new Board head.

Each partner received a Certificate of Partnership Interest, stating that the partnership was "formed pursuant to Japanese law." The contract also provided that the partnership regulations must be interpreted in accordance with Japanese law, and explicitly excluded the application of RCW 25.04.220 (right to an account), RCW 25.04.290 (dissolution defined), and RCW 25.04.420 (rights of retiring or estate of deceased partner when business continued). Another provision, however, provided that Washington

law should apply to issues concerning title to the property.

Tokyo was IC-1's official and principal place of business. APC and IRP were Japanese corporations. Prescott was a Washington corporation, and most of the individually named defendants were Washington residents.

The trial court granted partial summary judgment for defendants, ruling that plaintiffs' interests were not securities for purposes of the WSSA. In response to plaintiffs' motion to clarify, the court stated that Washington law applied.

The issue is whether the trial court erred in ruling that plaintiffs' general partnership interests were not securities.[2] Plaintiffs argue that under Washington law, their investments are securities, or, alternatively, that material issues of fact exist as to whether they are securities. Because the prior defendants contended that Japanese, not Washington, law applied, we address this issue first. Under Japanese law, the parties agree that the general partnership is not a security.

■ Plaintiffs argue that the contract's choice-of-law provision is invalid under the WSSA. This is a question of law that we review de novo. *Bjarnson v. Kitsap County*, 78 Wn. App. 840, 844, 899 P.2d 1290 (1995).

■ ■ The WSSA states that any provision binding a person acquiring a security to waive compliance with the statute is void. RCW 21.20.430(5). Washington courts will not implement a choice of law provision if it conflicts with a fundamental state policy or if the state has a materially greater interest than the other jurisdiction in the resolution of the issue. *Rutter v. BX of Tri-Cities, Inc.*, 60 Wn.

---

[2]Ito also assigns error to the court's sua sponte granting of partial summary judgment for defendants because defendants did not bring a cross motion for summary judgment. Ito, however, provides no briefing on this issue. In the absence of briefing, we need not address this issue. RAP 10.3(5). In any case, however, defendants requested such relief in their Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, and Ito was on notice of defendant's position.

App. 743, 746, 806 P.2d 1266 (1991). Here, the State has a strong interest in applying its securities act to a partnership involving several Washington defendants, Washington plaintiffs, and property located in Washington. Because the WSSA expressly invalidates provisions waiving compliance with the statute, we do not rely on the choice of law provision and instead conduct a choice of law analysis.

In determining choice of law, Washington applies the most significant relationship test under which each State's interest must be analyzed in relation to the specific issue. *Williams v. State*, 76 Wn. App. 237, 241, 885 P.2d 845 (1994); *Haberman v. WPPSS*, 109 Wn.2d 107, 134, 744 P.2d 1032, 750 P.2d 254 (1987). The test is equally applicable when the laws of a foreign country are at issue. *See Untersteiner v. Untersteiner*, 32 Wn. App. 859, 862, 650 P.2d 256 (1982). Courts must first evaluate the parties' contacts with each interested jurisdiction, considering which contacts are most significant. *In re Badger Mountain Irr. Dist. Securities Litig.*, 143 F.R.D. 693, 699-700 (W.D. Wash. 1992). The court then considers the interests and public policies of potential interested jurisdictions. *In re Badger*, 143 F.R.D. at 700.

In evaluating each party's contacts, several factors weigh in each party's favor. The prior defendants argued that (1) the offering materials and advertisements emanated in Japan, (2) the misrepresentations took place in Japan, (3) the transaction documents were signed in Japan, and (4) IC-1's principal offices were located in Tokyo. The choice of law provision under the contract also weighs in favor of applying Japanese law. *See Kammerer v. Western Gear Corp.*, 96 Wn.2d 416, 423, 635 P.2d 708 (1981); *see also Recaman v. Barish*, 408 F. Supp. 1189, 1197 (1975) (E.D. Pa. 1975) (nationality of defrauded investors is a factor in subject matter jurisdiction analysis).

Plaintiffs note that (1) Ito International is a Washington corporation owning nearly one-third of the shares, (2) all defendants reside or conduct business in Washington, (3)

the investment involves Washington property, (4) the building is managed under agreements which each contain a Washington choice-of-law clause, (5) Washington individuals guaranteed the 6.4 percent rate of return, (6) the offering materials emanated from Seattle, (7) selling and marketing activity occurred in Seattle, (8) a Seattle attorney was involved in preparing and reviewing many transaction documents, (9) a cocktail party soliciting investors occurred in Seattle, and (10) many of the acts of alleged fraud occurred in Washington.[3]

While both Washington and Japan had significant contacts with the transaction, we hold that public policy favors the application of Washington law. Washington residents were involved in the sale and should not escape any potential liability simply because the purchasers happened to be Japanese nationals. *See Butte Mining PLC v. Smith,* 76 F.3d 287, 290 (9th Cir. 1996) (court does not want to encourage persons who wish to defraud foreign securities purchasers to use the U.S. as a haven). Additionally, Ito is a Washington corporation, and the property is located in Washington. The application of Washington law would also encourage Washington residents involved in business transactions to behave responsibly. *See Butte Mining,* 76 F.3d at 290-91. We thus affirm the application of Washington law and turn to whether the partnership interests were securities under Washington law.

■ The WSSA defines security in part as any "investment contract" or "investment of money or other consideration in the risk capital of a venture with the expectation of some valuable benefit to the investor where the investor does not receive the right to exercise practical or actual control over the managerial decision of the venture[.]" RCW 21.20.005(12). The definition of a security is a flexible one emphasizing substance over form. *Cellular Engineering, Ltd. v. O'Neill,* 118 Wn.2d 16, 24, 820 P.2d 941 (1991).

---

[3]Some of Ito's arguments in favor of the application of Washington law are no longer relevant because most of the defendants have settled. We note, however, that our analysis is the same with or without the prior defendants.

■ The federal courts have defined a security as "a contract, transaction or scheme whereby a person invests his [or her] money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed 1244 (1946). Washington courts apply a modified *Howey* test, defining a security as (1) an investment of money (2) in a common enterprise and (3) the efforts of the promoter or a third party must have been fundamentally significant ones that affected the investment's success or failure. *Cellular*, 118 Wn.2d at 26-31. The third element of the test is disputed.

■ Limited partnerships are generally considered securities because the investor puts his or her funds at risk and depends largely upon the managing partners' efforts to realize a profit. *Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 848, 786 P.2d 285, *review denied*, 114 Wn.2d 1023 (1990). On the other hand, general partnerships are usually not considered securities unless the partner has limited actual control and depends largely upon others' managerial efforts.[4] *See Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992); *State v. Ribadeneira*, 817 P.2d 1105, 1110 (Kan. App. 1991). In determining whether a general partnership interest is a security, courts look to whether the investors had a practical as well as a legal ability to control the investment. *Koch v. Hankins*, 928 F.2d 1471, 1478 (9th Cir. 1991).

---

[4]In evaluating whether a general partnership is a security, the Ninth Circuit looks to three factors to determine whether the investors are primarily dependent upon others for their profits: (1) Did an agreement between parties leave so little power in the hands of the partner that the arrangement functions like a limited partnership? (2) Was the partner or venturer so inexperienced or unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership interests? or (3) Was the partner so dependent on some unique entrepreneurial or management function of the promoter that he cannot replace the enterprise's manager or otherwise exercise meaningful partner power? *Koch v. Hankins*, 928 F.2d 1471, 1476-77 (9th Cir. 1991) (citing *Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)). Washington has not formally adopted the *Williamson* test, and we need not do so here. But we believe that here, the first prong is satisfied because the agreement functions like a limited partnership in that it leaves so little power in the hands of a the limited partners.

Here, we find that plaintiffs held a passive interest because they depended substantially upon defendants' management to obtain a profit. The purchasers executed a special power of attorney, relinquishing broad powers to the Board. The Board thus has extensive managerial responsibilities. Furthermore, testimony from prior defendants indicates that they perceived plaintiffs' role as passive. Finally, the purchasers were guaranteed a modest rate of return, demonstrating that they did not control the realization of a profit but were depending exclusively on the efforts of others.

We note that the investors did retain the power to dismiss a director by a two-thirds vote and to take control of the company. And they did, in fact, exercise this power. But the WSSA's primary policy is to protect investors, and we thus construe that act liberally. *Compare Shinn*, 56 Wn. App. at 850 (distinguishing federal security act policy of protecting integrity of market and insuring disclosure) *with Bahre v. Pearl*, 595 A.2d 1027, 1033 (Me. 1991) (partners who exercised right to participate in partnership meetings before dissolution of business could not later argue that their role was passive from the outset). We note that a supermajority—not just a majority—was required for plaintiffs to remove a Board member. This supermajority, the broad powers delegated to the Board, the physical distance of the investors from the management of the property and the guaranteed rate of return render this general partnership more akin to a limited partnership than a general one. We thus reverse the partial motion for summary judgment because plaintiffs' general partnership interest constitutes a security as a matter of law, and we remand for trial.

Reversed and remanded.

BAKER, C.J., and ELLINGTON, J., concur.

After modification, further reconsideration denied November 4, 1996.