At least one other Western District of Washington decision tracks Murray 's lead in holding that Regulation applies to ERISA-governed plans in effect before its enactment. In Treves v. Union Security Insurance Company, LLC , 2014 WL 325149 (W.D. Wash., Jan. 29, 2014), the district court considered whether the Regulation applied to a discretionary clause in a disability plan which went into effect in 2002 (seven years before the Regulation). The court agreed with the reasoning of the Murray decision.
Still other Western District cases have held the Regulation applies without a discussion of the effective policy date. See Bourland v. Hartford Life & Acc. Ins. Co. , 2014 WL 4748218, *2, (W.D. Wash., Sept. 24, 2014) ; Mirick v. Prudential Ins. Co. of Am. , 100 F.Supp.3d 1094, 1097 (W.D.Wash. 2015) ; Pearson v. Aetna Life Ins. Co. , 2016 WL 2745299, *4 n.9 (W.D. Wash., May 10, 2016) ; Maher v. Aetna Life Ins. Co. , 186 F.Supp.3d 1117, 1125 (W.D. Wash. 2016) ("Though little discussed in Washington cases, courts in this district have uniformly applied the provision to invalidate grants of authority in insurance policies."). While Washington state courts have not spoken to the issue, a growing number of federal decisions interpreting Washington state law provide persuasive authority that the Regulation should apply here. Taken together, these cases show that the Regulation is applied where it was in effect at the time a claim arose. That view comports with the plain language of the Regulation itself, which simply provides that "[n]o disability insurance policy may contain a discretionary clause." WAC 284-96-012.
*1235 Unum's reliance on Saffon v. Wells Fargo & Co. Long Term Disability Plan , 522 F.3d 863 (9th Cir. 2008), is not persuasive. There, the Ninth Circuit concluded the California Insurance Commissioner's revocation of the Certificate of Insurance in the ERISA-qualified long-term disability policy at issue was ineffective because California statute did not permit the Commissioner to nullify a discretionary clause retroactively. Id. at 867. As the Murray decision noted, unlike the California statute, which "allows the commissioner to withdraw approval of the filing of any policy ... [,] WAC 284-96-012 does not establish similar parameters within which Washington's Insurance Commissioner may exercise discretion to approve or disapprove insurance policies. Rather, it prohibits discretionary clauses in all disability policies outright." 2011 WL 617384, at *3. Saffor 's holding regarding a different regulation from a different state does not support Unum's argument here.
Unum also relies on Landree v. Prudential Insurance Company of America , 2011 WL 3438860 (W.D. Wash. Aug. 5, 2011). (Doc. 25 at 12.) While Landree involves Washington law, Unum's reliance is nevertheless misplaced. In Landree , the district court reconsidered its earlier decision to apply de novo review to Prudential's decision to deny disability benefits where the decision to deny was finalized in 2008, before the enactment of the Regulation. 2011 WL 3438860, at *6. The court concluded that "[t]he Regulation does not apply retroactively to Prudential's decision to deny benefits because Prudential had a vested right in a deferential review and Prudential made the decision before the Regulation was issued." Id. at *8. Critically, the district court specified that it "expresse[d] no opinion on whether the Regulation would apply retroactively to an administrator's decision made after the Regulation was issued." Id. at *7 (emphasis in original). Landree is therefore not at odds with Murray , but simply reflects Landree 's rule that the Regulation applies if it was in effect at the time a plaintiff's cause of action accrued-in this case, at the time Unum decided to offset Rustad-Link's settlement.
Finally, Unum looks to several district court decisions from other circuits to support its argument that a plan's "Anniversary Date" does not make it subject to "subsequently-effective, prospective-only prohibition on discretionary clauses." (Doc. 25 at 13.) Two of these cases are distinguishable because the state regulations with which they dealt specified that they applied to plans effective or renewed after the regulation's effective date. See Owens v. Liberty Life , 184 F.Supp.3d 580, 585 (W.D. Ky. 2016) (regulation applied to "all disability income policies issued in [Kentucky] which are issued or renewed on and after March 1, 2013 " (emphasis in original) ); Rogers v. Reliance Std. Life Ins. Co. , 2015 WL 2148406, *7 (N.D. Ill. May 6, 2016) (the operative regulation applied "to policies that renew at any time beyond February 1, 2011").
The third case, Golden v. Guardian Life Insurance Company of America , 2010 WL 2293390 (N.D. Ill. June 1, 2010), is legally and factually distinct from this case. There, the court found the attachment of an amendment to a disability policy did not constitute renewal of the policy under Illinois law. Id. at *7-8. Under Washington law, an insurer must renew any insurance policy cancellable at the option of the insurer unless exceptions not applicable here exist. RCWA 48.18.2901(1), 48.18.290. Further, "any policy with no fixed expiration date, shall ... be considered as if written for successive policy periods or terms of one year." RCWA 48.18.2901. In this case, the Plan renews every year on January 1.
*1236 Additionally, the Plan at issue here is prefaced with an Amendment stating that "[t]he entire policy is replaced by the policy attached to this amendment," and with an effective date of January 1, 2010. (Doc. 16-16 at 40; AR 000340.) Finally, regardless of whether the Plan renews, the Washington federal cases discussed above have applied the Regulation at the time benefits are denied, not at the time a plan becomes effective.
De novo review is appropriate based on Washington law and federal district courts' interpretation of that law in analogous circumstances.[7]
B. Abuse of discretion review
Finally, even if the Regulation does not apply, Unum's structural conflict of interest requires a more searching abuse of discretion review. Where a fiduciary "both decides who gets benefits and pays for them," that fiduciary "has a direct financial incentive to deny claims," and therefore "labors under ... a conflict of interest." Saffon , 522 F.3d at 868. Unum is a fiduciary because it is "an entity with 'any discretionary authority' in the 'administration of an ERISA plan." Id. at 866 (quoting 29 U.S.C. § 1002(21)(A) ). As such, even if abuse of discretion review applies, Unum's decision to deduct from Rustad-Link's disability payments must be viewed through the lens of its structural conflict of interest-it had a "direct financial incentive," id. at 868, to offset its payments to Rustad-Link. As outlined above, that conflict is apparent in the record, where Unum's determination of Rustad-Link's disabling condition changed from amputation to MS over time, but reverted to MS when it became apparent settlement money might be available for an offset. While Unum argues it pays regardless of disability categorization, it cannot then twist the Plan language to conclude as a consequence that it gets to offset any source of compensation by denominating the source as "income".
II. Attorney-Client Privilege
Unum claims attorney-client privilege over a number of documents detailing consultations betwen Unum's claims and financial employees and its in-house counsel. (Doc. 16-2.) Rustad-Link argues Unum cannot assert the privilege because at the time of the communications it owed her a fiduciary duty, meaning the fiduciary exception to the attorney-client privilege should apply. (Doc. 19 at 30; Doc. 27 at 23.) Unum argues both that it can assert the privilege, and that the attorney-client communications at issue are irrelevant when a court conducts a de novo review. (Doc. 25 at 17-18.)
The fiduciary exception to the attorney-client privilege prevents Unum from asserting the privilege over communications with its in-house counsel that occurred while Unum was acting in a fiduciary capacity *1237 toward its plan beneficiary, Rustad-Link.
" 'As applied in the ERISA context, the fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration.' " Stephan v. Unum Life Ins. Co. of Am. , 697 F.3d 917, 931 (9th Cir. 2012) (quoting United States v. Mett , 178 F.3d 1058, 1063 (9th Cir. 1999) ). "The duty of an ERISA fiduciary to disclose all information regarding plan administration applies ... to insurance companies...." Id. Whether the fiduciary exception applies depends on the nature of the legal advice sought:
[T]he case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.
Mett , 178 F.3d at 1064. In Stephan , after an in camera review, the Ninth Circuit concluded that "notes of conversations between Unum claims analysts and Unum's in-house counsel about how the insurance policy under which Stephan was covered ought to be interpreted and whether Stephan's bonus ought to be considered monthly earnings within the meaning the Plan" fell within the fiduciary exception and thus were not protected by the attorney-client privilege. 697 F.3d at 932. It rejected Unum's argument that because the memoranda were created after Unum had received correspondence from Stephan's counsel, and therefore there was "an indication that the parties m[ight] become adverse," the fiduciary exception ought not apply. Id. at 933. Instead, the Stephan court "agree[d] with the weight of authority" that "it is not until after the final determination-that is, after the final administrative appeal-that the interests of the Plan fiduciary and the beneficiary diverge for purposes of application of the fiduciary exception." Id.
Unum relies on Blaj v. Unum Life Insurance Co. of America , 2014 WL 2735182 (N.D. Cal. June 16, 2014) and Healy v. Fortis Benefits Insurance Co. , 2014 WL 5768537 (N.D. Cal. Nov. 5, 2014), to argue it does not need to disclose the disputed communications if de novo review applies. (Doc. 25 at 17.) In Blaj , the court noted that, when a de novo standard of review is applied to the plan administrator's decision, "a district court should determine whether the plaintiff is entitled to benefits based on the evidence in the administrative record, and evidence outside the administrative record may only be considered in 'certain limited circumstances.' " 2014 WL 2735182, at *2 (citing Opeta v. Nw. Airlines Pension Plan , 484 F.3d 1211, 1217 (9th Cir. 2007) ). It therefore held that "any opinions or memoranda regarding Plaintiff's claim [were] irrelevant, because any credibility regarding the claim determination [was] not at issue under the de novo standard of review." Id. at *4. In Healy , the court also relied on the restricted scope of de novo review to limit disclosure of communications between the defendant parties. 2014 WL 5768537, at *2.
Both Blaj and Healy stressed the distinction between the administrative record and extrinsic evidence. In Opeta , the Ninth Circuit emphasized the rule that "in most cases only the evidence that was before the plan administrator at the time *1238 of determination should be considered" in a de novo review. 484 F.3d at 1217 (citations and alterations omitted). Here, the contested documents were withheld from the administrative record on the basis of attorney-client privilege. (Doc. 16-2 at 2-3.) But as Unum explained at the hearing in this case, the administrative record is nothing more than Rustad-Link's case file-and her case file included the communications with counsel Unum now seeks to protect, which were only withheld once litigation began. Accordingly, the distinction between extrinsic and administrative record evidence is based solely on Unum's assertion of attorney-client privilege. Unum's argument is circular-it asserts the privilege on the basis of the administrative record/extrinsic evidence divide, while having itself created that divide in the first instance. Neither Blaj nor Healy address this logical inconsistency, and in any event neither are binding here. In the ERISA context, "[t]he district court may try the case on the record that the administrator had before it." Kearney v. Standard Ins. Co. , 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). In this case, that record includes Unum's communications with its counsel.
Rustad-Link correctly argues that the fiduciary exception to the attorney-client privilege applies. As in Stephan , that means "it is not until after the final determination-that is, after the final administrative appeal-that the interests of the Plan fiduciary and the beneficiary diverge for purposes of application of the fiduciary exception." 697 F.3d at 933. Of the documents Unum claims are protected by attorney-client privilege, 22 predate Unum's denial of Rustad-Link's appeal, with one more occurring on the same date as the denial, July 14, 2015. (Doc. 16-2 at 2-3.) Those documents are thus subject to the fiduciary exception, and must be produced.[8] The remaining documents post-date Unum's denial of Rustad-Link's appeal, and therefore fall on the end of the spectrum "where a plan fiduciary retains counsel in order to defend [itself] against the plan beneficiar[y]." Mett , 178 F.3d at 1064. Those documents do not need to be produced.
III. Witholding of Benefits
Rustad-Link argues Unum breached its fiduciary duty to her when it interpreted the Plan to suit its own financial interest by determining it was entitled to offset her benefit payments based on the settlement she received for her amputation. (Doc. 19 at 24; Doc. 27 at 10.) Unum insists that it correctly interpreted the Plan, specifically that its interpretation of the undefined term "same disability" was correct. (Doc. 25 at 18; Doc. 28 at 9.) As to the policy interpretation, Rustad-Link has the better argument.
Assessing the arguments begins with examining the language of the Plan. The Plan provides for a number of different "eligible groups" in which insureds fall depending *1239 on employer. (Doc. 16-3 at 5; AR 000005.) As an employee of Providence in Polson, Rustad-Link was in "Eligible Group 12". The Plan defines "disability" for those in Eligible Group 12:
HOW DOES UNUM DEFINE DISABILITY?
Groups 1 through 4, 7, 8, 11, 12 and 13
You are disabled when Unum determines that:
-You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
-you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.
You must be under the regular care of a physician in order to be considered disabled.
(Doc. 16-3 at 26; AR 000026) (emphasis in original to denote defined terms). "Injury means a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the plan." (Doc. 16-3 at 46; AR 000046.) "Sickness means an illness or disease. Disability must begin while you are covered under the plan." (Doc. 16-3 at 49; AR 000049.)
The Plan provides that it will "[s]ubtract from your gross disability payment any deductible sources of income ." (Doc. 16-3 at 29; AR 000029.) It defines deductible sources of income, in part, as "[t]he amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise." (Doc. 16-3 at 33; AR 000033.) The Plan also provides that, "[w]ith the exception of retirement payments, Unum will only subtract deductible sources of income which are payable as a result of the same disability." Id. "Same disability" is not a defined term.
A. "Same disability"
Rustad-Link argues that "same disability" means the same medical condition. (Doc. 27 at 12.) Unum disagrees, insisting "same disability" means the same time period of disability. Unum's interpretation is impermissibly self-serving. As discussed in Section I, supra, de novo review of Unum's interpretation is appropriate.[9] To determine whether Unum's interpretation of the Plan was correct, the first step is to interpret the contract. Cf. Firestone , 489 U.S. at 114, 109 S.Ct. 948 ("[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue.").
"[T]he rule that contractual provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA [welfare benefits] plan." M & G Polymers USA, LLC v. Tackett , --- U.S. ----, 135 S.Ct. 926, 933, 190 L.Ed.2d 809 (2015) (quotation omitted, alteration original). " 'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.' " Id. (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) ).
*1240 But where the language of the ERISA-governed plan is ambiguous, those ambiguities must be construed against the insurer. Kunin v. Benefit Trust Life Ins. Co. , 910 F.2d 534, 539-40 (9th Cir. 1990). Under Washington law, a clause in an insurance contract "is ambiguous only when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." Quadrant Corp. v. Am. States Ins. Co. , 154 Wash.2d 165, 110 P.3d 733, 737 (2005) (citation omitted). The insurance contract is "consider[ed] ... as a whole, and ... give[n] a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Id. (citation omitted). The Plan itself requires that "[a]ll benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim." (Doc. 16-3 at 59; AR 000059.)
As stated above, the Plan provides that Unum may deduct third party settlements from its benefits payments when those settlements "are payable as a result of the same disability." "Same disability" is not defined. "Disability," per the Plan, is due either to "sickness or injury." Both the definition of "sickness" and "injury" include that they must begin while the insured is covered. However, neither they nor the definition of "disability" include language stating or implying that disability constitutes a time period. The plain language of the Plan supports Rustad-Link's interpretation, not Unum's. Moreover, even were the definition of "same disability" a close call, "ambiguities must be construed against the insurer." Kunin , 910 F.2d at 539-40.
Unum's relies on several out-of-circuit cases for the proposition that "same disability" means the time period of disability. These cases do not carry the day. In Bacquie v. Liberty Mutual Insurance Co. , 435 F.Supp.2d 318 (S.D.N.Y. 2006), aff'd, Bacquie v. Liberty Mutual Insurance Company , 247 Fed. Appx. 296 (2d Cir. 2007), the courts applied arbitrary and capricious, not de novo , review. As Rustad-Link points out, the logic of the Bacquie decision, which held that the definition of "same disability" is best understood as the effect of a diagnosis, rather than the diagnosis itself, is flawed. By that logic, an ERISA administrator could deduct against third party settlements for any kind of injury or sickness during the time period it paid disability benefits, an interpretation that favors the insurer at the expense of the insured. (Doc. 27 at 14.) Rustad-Link also accurately notes that Unum's assertion that "same disability" does not mean same medical condition is undercut by its decision to switch Rustad-Link's injury causing disability from MS back to amputation after it learned of her settlement, due to her amputation and a settlement agreement that excludes "income". ( Id. )
Unum also relies on Pettit v. UnumProvident Corp. , 774 F.Supp.2d 970 (S.D. Iowa 2011). However, the Pettit court applied the abuse of discretion, rather than de novo standard, to conclude that Unum's interpretation was "reasonable." Id. at 979, 984. Pettit is also subject to the logical inconsistency present in Bacquie. Unum's interpretation of the Plan language is impermissibly self-serving.
B. Reinstatement of benefits
Rustad-Link seeks all disability benefits available under the Plan, including reimbursement for past benefits wrongfully withheld. (Doc. 3 at 16.) ERISA provides for the "recover[y] of benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 US.C. § 1132(a)(1)(B). It is thus necessary *1241 to decide what benefits Rustad-Link is entitled to under the Plan, given that the record shows her disability involves both MS and amputation.
She argues Unum changed her injury causing disability designation from MS to amputation to take advantage of her third-party settlement. (Doc. 27 at 7.) The record supports her argument. Unum determined Rustad-Link's disabling injury was MS in 2012. (Doc. 16-15 at 37.) In 2014, after Rustad-Link informed Unum of her settlement, Unum changed its assessment. (Doc. 16-18 at 26-27, 30.) It did so apparently not as a result of any new medical information-as none is reflected in the record-but to take advantage of the settlement by treating the entirety of her misfortune as income.
The Plan does not provide for apportionment based on different medical conditions, as Unum's correspondence with Rustad-Link emphasize. On November 6, 2014, after deciding to deduct against Rustad-Link's benefit payments, Unum informed her that "[u]pon review of Ms. Rustad-Link's medical records, it is apparent that her condition of MS is not a basis for her disability and that she is impaired only as a result of her below-the-knee amputation. This condition alone causes her current inability to work in any gainful occupation." (Doc. 16-18 at 30-31; AR 0002170-71.) In its correspondence with Rustad-Link following its decision to deduct from her benefit payments, Unum also stated:
[w]e are not required under the policy to apportion a deductible source of income with respect to the disabling diagnostic condition associated with that source of income. In this case, the third party settlement received by Ms. Rustad-Link will be considered a deductible source of income for the duration of her claim.
(Doc. 16-18 at 55; AR 002199.)
Where the Plan does not require Unum to apportion a deductible source of income with respect to the disabling condition, allowing it to apportion to Rustad-Link's detriment would not be a reasonable benefit determination.
Examination of the Plan language also shows Unum's assertion that the entirety of Rustad-Link's settlement constitutes a deductible source of income casts too wide a net. The Plan lists seven deductible sources of income. (Doc. 16-3 at 32-33; AR 000032-33.) The first six deductible sources are amounts received (1) under worker's compensation or similar laws; (2) as disability income payments under state law, automobile liability insurance policy, group insurance, or government retirement system; (3) as disability payments under Social Security; (4) as retirement payments under Social Security; (5) as disability payments under an employer's retirement plan; and (6) under the Jones Act.[10] (Id. ) In contrast, the seventh deductible source-the one at issue here-provides that Unum may offset against amounts received as third party "judgment[s], settlement[s] or otherwise." This list can be read one of two ways: either the seventh deductible source carves out a much wider range of deductible sources of income, sources potentially unrelated to any disability, or it is bounded by the preceding six, and pertains only to disability-related payments.
Because it is susceptible to two different readings, the deductible income clause is ambiguous. That ambiguity must be resolved in Rustad-Link's favor, meaning *1242 that the offset for income described at paragraph seven must be narrowly construed. Such a reading is supported by the manner in which the Plan calculates disability benefits-as a percentage of "monthly earnings," at her workplace (and not as a percentage of any income she might receive). (Doc. 16-3 at 28; AR 000028.) Rustad-Link's settlement states that "Releasor [Rustad-Link] represents that no amount of the Settlement payment is allocated to lost wages." (Doc. 16-17 at 148; AR 002129.) While that self-serving characterization does not bind the Plan, Unum nonetheless bore the burden of disputing that contention by showing it was reasonably entitled to offset under the Plan. But Unum failed to take the reasonable course.
Rustad-Link is entitled to reinstatement of the full amount of the amputation settlement offset Unum has taken against her disability payments. First, Unum's definition of "same disability" is unreasonably self-serving. Second, Unum's assertion of the deductible source of income offset rests on an ambiguous policy provision that must be read in Rustad-Link's favor. This conclusion does not mean that all third-party settlements would be beyond the reach of the Plan's deductible sources of income, nor that simply allocating settlement proceeds away from wages would prevent a reasonable offset. Instead, it reflects that Unum has attempted to benefit from Rustad-Link's misfortune by unreasonably asserting an offset against a settlement for a different disabling condition. Thus while neither party's absolutist argument is compelling, applying "a fair, reasonable, and sensible construction as would be given to the [Plan] by the average person purchasing insurance," Quadrant , 110 P.3d at 737, means Rustad-Link prevails here.
C. Attorney's Fees
Rustad-Link also requests attorney's fees. ERISA provides that, in an action brought by a plan beneficiary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Section 1132(g)(1)"does not expressly demand, like so many statutes, that a claimant be a prevailing party before receiving attorney's fees." Hardt v. Reliance Standard Life Ins. Co. , 560 U.S. 242, 245, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (quotation marks omitted). Therefore, "[a] fee claimant need not be a prevailing party to be eligible for an attorney's fees award under [it]." Id. (quotation marks omitted). Under § 1132(g)(1), "a fees claimant must show some degree of success on the merits before a court may award attorney's fees." Id. at 255, 130 S.Ct. 2149 (quotation omitted). "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." Id. (quotations and alterations omitted).
Rustad-Link has shown Unum wrongfully deducted against her disability benefits, and that Unum should be required to reinstate her present and future benefits without an offset against her settlement. An award of reasonable attorney's fees is appropriate.
CONCLUSION
IT IS ORDERED that Rustad-Link's motion for summary judgment (Doc. 17) is GRANTED. Unum's motion (Doc. 24) is DENIED.
IT IS FURTHER ORDERED that Unum shall reimburse Rustad-Link for the benefits it withheld, and shall reinstate *1243 her present and future benefits without the offset.
IT IS FURTHER ORDERED that Rustad-Link shall submit a request for fees and costs, supported by affidavit and other documentation, within 14 days of the date of this Order. Unum shall have 14 days to respond to Rustad-Link's request.
Rustad-Link requests an award of pre-judgment interest, but the issue has not been briefed. Accordingly,
IT IS FURTHER ORDERED that Rustad-Link shall submit a reasoned request for an award of pre-judgment interest within 14 days of the date of this Order. Unum shall have 14 days to respond to Rustad-Link's request.

Rustad-Link also argues the discretionary clause violates Washington state public policy. (Doc. 19 at 21.) Because the Regulation applies to the Plan, whether Washington public policy requires its application is moot. That said, Rustad-Link is correct that "Washington courts will not implement a choice of law provision if it conflicts with a fundamental state policy." Ito Int'l Corp. v. Prescott, Inc. , 83 Wash. App. 282, 288, 921 P.2d 566 (1996) (citing Rutter v. BX of Tri-Cities, Inc. , 60 Wash. App. 743, 746, 806 P.2d 1266 (1991) ). Rustad-Link also points out that, in at least one case, a federal court has declined to enforce a discretionary clause because to do so would violate Washington's policy against them. Flaaen v. Principal Life Ins. Co., Inc. , 226 F.Supp.3d 1162, 1166-68 (W.D. Wash. 2016) (holding discretionary clause in disability plan governed by Texas law was unenforceable). Thus, while not necessary for the purpose of determining whether the Regulation applies here, Washington public policy supports de novo review.

Unum also asserts that an internal communication with in-house counsel (Doc. 3-28) regarding Rustad-Link's amputation settlement is privileged, even though it sent the communication to Rustad-Link as part of her claim file on July 24, 2015. (Doc. 27 at 25.) Unum misses the point. First, the document was created September 25, 2014, before Unum denied Rustad-Link's appeal; second, voluntarily disclosing privileged documents to third parties will generally destroy the [attorney-client] privilege," In re Pac. Pictures Corp. , 679 F.3d 1121, 1126-27 (9th Cir. 2012), and no evidence suggests Unum did not disclose voluntarily; third, Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure, on which Unum relies, places the burden to return a privileged document on the opposing party after the disclosing party notifies it and Unum did not assert the privilege until after Rustad-Link filed her complaint.

The result would be the same under abuse of discretion review, in light of "the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it," as Unum does here. Abatie , 458 F.3d at 967.

The Jones Act provides a cause of action for personal injury or death of a seaman. 46 U.S.C. § 30104.