93 P.3d 919 (2004)
122 Wash.App. 258
Glenn STEWART, an individual, Appellant,
v.
The ESTATE OF George STEINER and Jane Doe Steiner; Prudential Securities, Inc., a Delaware corporation; Locate Networks, Inc., a Washington corporation; Michael Crowson and Jane Doe Crowson, husband and wife, Respondents.
No. 52416-0-I.
Court of Appeals of Washington, Division 1.
July 6, 2004.
*920 William Robert Spurr, Seattle, WA, for Appellant.
David D. Hoff, Toby James Marshall, Tousley Brain Stephens PLLC, Seattle, WA, for The Estate of George Steiner and Jane Doe Steiner.
James L. Robart, Matthew J. Macario, Lane Powell Spears Lubersky LLP, Seattle, WA, for Respondent Prudential Securities, Inc.
Jerret E. Sale, Deborah Lynn Carstens, Bullivant Houser Bailey PC, Seattle, WA, for Locate Networks, Inc., Michael Crowson and Jane Doe Crowson.
COX, C.J.
A purchaser of securities establishes liability for violation of the Washington State Securities Act ("WSSA") by proving that the seller and/or others made material misrepresentations or omissions and the purchaser relied on those misrepresentations or omissions.[1] But such a purchaser may be unable to establish reliance by having agreed, in writing, in advance of the sale that he or she relied solely on specified written materials about the securities in making the purchase. Prior to closing, Dr. Glenn Stewart, the purchaser in this case, expressly warranted in a subscription agreement for the securities at issue that he relied solely on a written offering memorandum and did not rely on any oral representations in making his investment decision. Under the totality of the circumstances evidenced in the record, there is no basis to conclude that Dr. Stewart reasonably relied on the matters he asserts. Accordingly, we affirm the summary judgments of dismissal.
Dr. Stewart is a physician who left the practice of medicine to become a full-time professional investor. George Steiner was a registered stockbroker who worked for Prudential Securities at the time of the transaction at issue here.[2] Locate Networks, Inc.[3] *921 is a startup technology company, and Michael Crowson is its president and CEO.
Viewing the evidence in the light most favorable to Dr. Stewart, the nonmoving party in the summary judgment motions before us for review, the facts are as follows. Steiner and Dr. Stewart spoke with each other at a holiday party in late 1999. Dr. Stewart had invested money through Steiner and Prudential in the past, but was not then a Prudential customer. Steiner was a stockbroker employed by Prudential at the time the two spoke.
Steiner described Locate's stock offering as a "hot" investment in a $15,000,000 offering that was "oversubscribed." Steiner said he had invested his own money in the offering. As Dr. Stewart was leaving the party, Steiner stopped him and handed him his Prudential business card, inviting him to call.
A few days after the party, Steiner called Dr. Stewart and told him that due to some last-minute developments, there was still an opportunity to participate in the offering, but he would have to invest in the next couple of days. Dr. Stewart indicated his interest and Steiner arranged to have Locate mail Dr. Stewart its offering memorandum and subscription agreement.
The Confidential Private Placement Memorandum dated December 1999 ("Memorandum") contained detailed information, including over six pages of "Risk Factors," for a potential investor to consider. There were also specific warnings about the investment's "high degree of risk" and technological and financing risk factors. The Memorandum also stated that the offering was to raise a minimum of $8,025,000 and a maximum of $15,000,000. It also warned of "the possibility that an investor could lose all of his or her investment."
After reviewing the Memorandum, Dr. Stewart called Steiner to ask questions about the offering. Steiner said that the offering had raised the full $15,000,000 maximum, but that Dr. Stewart might still be able to invest.
After speaking with Steiner, Dr. Stewart called Michael Crowson to ask him about the offering. Crowson told Dr. Stewart that the offering was fully funded and the company would go public. Crowson also justified the valuation of the founders' shares by stating that Locate had no financing risk  it was "fully funded," and had no technology risk  "all of the technology has already been developed."
Dr. Stewart decided to purchase 40,000 shares for $150,000. He submitted a check and his signed Subscription Agreement to escrow with Locate's legal counsel. Locate then transferred the shares to Dr. Stewart.
Dr. Stewart became disappointed with the performance of the stock. According to Dr. Stewart, Steiner failed to disclose material information. For example, Dr. Stewart claims he did not know prior to the purchase that Steiner had obtained approval from Prudential to act as an independent consultant to help Locate raise funds through a private stock offering. Steiner's consultation work for Locate required him to contact potential investors, tell them about the Locate offering, and send potential investors to presentations about Locate. He was to be paid $75,000 and given fully-vested ten-year warrants for 160,000 shares of Locate stock at the closing of the offering. Dr. Stewart contends these were material omissions that would have affected his investment decision had he known about them prior to purchasing the stock.
Dr. Stewart also contends that statements by Steiner and/or Crowson were misleading. For example, Dr. Stewart asserts that the offering was not fully subscribed, as represented. Moreover, he claims that Steiner had not invested his own money, as represented. Dr. Stewart contends these were material oral misrepresentations supporting liability under the WSSA.
Dr. Stewart commenced this action under the WSSA against Steiner, Prudential, Locate, and Crowson, seeking the relief specified in that statute. He did not plead any common law claims.
Prudential moved for summary judgment, which the trial court granted. Dr. Stewart moved for reconsideration and clarification, *922 which the court denied. The state supreme court denied Dr. Stewart's motion for direct discretionary review.
The trial court later granted motions for summary judgment by Steiner, Crowson, and Locate, and Dr. Stewart appeals.

RELIANCE
Dr. Stewart first argues that Steiner, Crowson, and Locate violated the WSSA by making material misrepresentations and/or omitting material information in their oral communications with him and that he relied on their statements in making his decision to invest. We hold that Dr. Stewart failed to establish reliance, and under the totality of the circumstances in the record before us, this failure is fatal to his claims under the WSSA.
Summary judgment is appropriate only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[4] A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[5] The standard of review for a ruling on summary judgment is de novo.[6]
To establish liability under the WSSA, the purchaser of a security must prove that the seller and/or others made material misrepresentations or omissions about the security, and the purchaser relied on those misrepresentations or omissions.[7] Because the primary purpose of the WSSA is to protect investors, we construe it liberally.[8]
We first determine whether there are any genuine issues of material fact. While there are disputed facts regarding the alleged misrepresentations and/or omissions under the act, they are immaterial for summary judgment purposes if the record shows there is no genuine issue of fact regarding reliance  the other essential element to prove a claim under the WSSA. Here, that element requires us to examine the warranties and disclaimers in the Subscription Agreement that Dr. Stewart signed as well as other relevant factors to determine whether he reasonably relied on the matters underlying his lawsuit.
We focus first on the specific assertions that Dr. Stewart makes in his claims under the WSSA. In his declaration opposing the grant of summary judgment, he identified both alleged misrepresentations and omissions. The misrepresentations that he identified are:
[T]he offering was over-subscribed, and that only a last-minute cancellation afforded me an opportunity to invest; the full $15,000,000 had already been raised in the offering; Steiner had invested his own money in the offering; I [Stewart] could only participate in the offering if he [sic] came up with the money in the next "couple of days."
The alleged material omissions that he identified are:
Steiner's work on the offering was outside the auspices of Prudential; Steiner was in violation of his contract with Prudential concerning the offering, because the contract prohibited him from soliciting investors or raising capital for Loc8; Steiner's stake in the offering was not an ordinary commission arrangement, rather he was to be paid $75,000 and given fully-vested ten-year warrants for 160,000 shares of Loc8 stock at the final closing of the offering; Steiner concealed from Loc8 the fact that his contract with Prudential prohibited him from soliciting investors or raising capital for Loc8; Steiner had misrepresented to Loc8 that he had already obtained permission from Prudential to work on the Loc8 offering.
*923 Steiner, Locate, and Crowson argue that the above matters do not constitute either material misrepresentations or omissions, and that we may reach those conclusions as a matter of law on the record before us. We decline to do so. Rather, we assume, without deciding, for purposes of the summary judgment motions only that the above matters that Dr. Stewart identifies create genuine issues of fact whether there were material misrepresentations and/or omissions. Thus, they could be genuine issues of material fact that would preclude summary judgment.
The question is whether Dr. Stewart reasonably relied on any of those matters in making his investment decision.[9] If he did not, then it is immaterial whether there were misrepresentations and/or omissions because an essential element of his claim  reliance  is missing, and summary judgment is proper.

Subscription Agreement
It is undisputed that prior to closing, Dr. Stewart executed and delivered to Locate his Subscription Agreement together with his check for the purchase of shares. That agreement provides in part:
...
2. Investor Representations, Warranties and Covenants. The undersigned hereby acknowledges, represents and warrants to, and agrees with, the Company as follows:
...
(d) The undersigned:
(i)has been furnished with [the Confidential Private Placement Memorandum, dated December 1, 1999] and any other documents which have been made available upon request and he/she has carefully read the Memorandum and understands and has evaluated the risks of a purchase of Shares, including the risks set forth under "Risk Factors" in the Memorandum; and has relied solely on the information contained in the Memorandum, and any supplemental written information furnished pursuant to Subsection (ii) below:
(ii)has been given the opportunity to ask questions of, and receive information from the Company concerning the terms and conditions of the offering of the Shares, and has been given the opportunity to obtain such additional information necessary to satisfy himself/herself as to the accuracy of the information contained in the Memorandum or that which was otherwise provided in order for him/her to evaluate the merits and risks of investment in the Shares to the extent that the Company possesses such information or can acquire it without unreasonable effort or expense and such informationhas not been furnished with any other offering literature except as mentioned herein or in the Memorandum;
(iii) has not relied on any oral representation, warranty or information in connection with the offering of the Shares by the Company, or any officer, employee, agent, affiliate or subsidiary of the Company;
...
(g) The foregoing acknowledgments, representations, warranties and agreements shall survive the closing at which the Shares are issued.... [[10]]
...
The plain words of the agreement state that Dr. Stewart warranted that he "relied *924 solely on the information contained in the Memorandum" when he tendered his check for purchase of the shares. The same agreement warrants that he did not "[rely] on any oral representations, warranty or information in connection with the offering of Shares by the Company, or any officer ... agent ... of the Company...."
It is equally undisputed that prior to executing and delivering the Subscription Agreement to Locate, Dr. Stewart read the Memorandum that contained the following statement:
NO GENERAL SOLICITATION WILL BE CONDUCTED AND NO OFFERING LITERATURE OR ADVERTISING IN ANY FORM WILL OR MAY BE EMPLOYED... EXCEPT FOR THIS MEMORANDUM (INCLUDING AMENDMENTS AND SUPPLEMENTS TO THIS MEMORANDUM) AND THE DOCUMENTS SUMMARIZED HEREIN OR ENCLOSED HEREWITH. NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION NOT CONTAINED IN THIS MEMORANDUM (INCLUDING AMENDMENTS AND SUPPLEMENTS TO THIS MEMORANDUM) OR IN THE DOCUMENTS SUMMARIZED HEREIN OR ENCLOSED HEREWITH AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON.[[11]]
There is no genuine dispute by any party that Dr. Stewart is a sophisticated investor, one who has read both offering memoranda and subscription agreements of this general type in prior investments in which he has been involved.
The emphasized provisions in the Subscription Agreement are generally identified as "non-reliance" clauses in securities cases. No Washington court has addressed the effect of such clauses under the WSSA. But we are persuaded that this case is controlled by the principles articulated in the analogous federal securities cases addressing such clauses.
First among them is Rissman v. Rissman.[12] There, a minority stockholder signed an agreement in which he expressly agreed that he had not relied on any prior oral statement in making his decision to sell stock at a certain price.[13] Moreover, he expressly warranted that he was relying solely on the written agreement that he signed in connection with the transaction.[14] The court noted in the federal and state securities lawsuit that followed that the stockholder did not contend that any representation in the stock purchase agreement was untrue or misleading. Rather, his entire case rested on alleged oral statements.
The court started with the observation that "Securities law does not permit a party to a stock transaction to disavow such representations  to say, in effect `I lied when I told you I wasn't relying on your prior statements' and then to seek damages for their contents."[15] Further, the court observed "The principle is functionally the same as a doctrine long accepted in this circuit: that a person who has received written disclosure of the truth may not claim to rely on contrary oral falsehoods."[16] For further support, the court cited to other circuit court cases reaching the same result on similar grounds, Jackvony v. RIHT Financial Corp.[17] and One-O-One Enterprises, Inc. v. Caruso.[18] At least one other federal court *925 has reached the same result using the Rissman analysis.[19]
We also note that Dr. Stewart does not allege that he was fraudulently induced into signing the agreement. Rather, he claims that the defendants violated the WSSA by misrepresenting and/or omitting material information in connection with the sale of Locate securities to him. Thus, absent unenforceability of the disclaimers and warranties in the Subscription Agreement, Dr. Stewart may be bound by them.
Dr. Stewart advances several arguments to escape the effect of the language in the Subscription Agreement that he signed. None is persuasive.
He argues that the disclaimers at issue are unenforceable because they effectively waive compliance with the requirements of the WSSA. We hold that the disclaimers before us do no such thing.
First, nowhere in the plain language of the Subscription Agreement that we have already quoted in this opinion is there any express or implied waiver of compliance by any of the defendants with the WSSA. Moreover, Dr. Stewart fails to bring to our attention any such language. We must assume that he has failed to find any.
Second, Dr. Stewart's theory appears to be based almost exclusively on Rogen v. Ilikon Corp.[20] That was a federal securities act case in which stockholders sued for alleged concealment of material facts in connection with the sale of stock.[21] In considering certain language in an agreement that the plaintiff had signed, the court was called upon to consider whether the language supported the view that plaintiff could not have relied on certain representations. The court determined that it could not grant summary judgment based on the non-reliance language because it believed that a judge or jury could adopt alternate reasoning, which the court detailed in its opinion.[22] In dictum, the court went on to state that it equated disclaimer language with waiver of the protections of the federal securities act.[23]
Whatever validity that dictum may have had in that case, it has been rejected in Harsco Corp. v. Segui, a more recent decision out of the Second Circuit Court of Appeals.[24] In Harsco, the court affirmed a motion to dismiss, concluding a non-reliance agreement controlled the transaction and did not violate the anti-waiver provisions of federal securities law.[25] The court reasoned the non-reliance disclaimer in the sales agreement limited the bases upon which a fraud action could be brought and "weakened" the plaintiff's ability to recover under the 10(b) of the Exchange Act, but did not violate federal securities law by waiving compliance with them.[26] The court relied on the comparable sophistication of the parties, the plaintiff's agreement to rely solely on the written representations of the defendant, and that the agreement did not preclude the plaintiff from suing at all to dismiss the claim.[27]
We reject the Rogen reasoning both because the plain language of the Subscription Agreement does not require anyone to waive compliance with the WSSA, and for the reasons stated in Harsco.
Dr. Stewart also argues, without citation to any authority, that the alleged misrepresentations that are not contradicted by the Memorandum are not immunized by the disclaimers. We disagree.
*926 Noting that the alleged misrepresentations relate to the status of the offering and whether Steiner invested his own money, not to Locate or other information addressed in the Memorandum, he claims that he justifiably relied on the oral misrepresentations. The simple answer to this argument is that he expressly agreed that he did not rely on any oral representations and relied solely on the Memorandum. And we simply view as unconvincing Dr. Stewart's statement that he viewed the disclaimers as limited to establishing the Memorandum as "the `official' source of information about the subjects addressed in the Offering Memorandum."[28] A fair reading of the Subscription Agreement and the Memorandum does not support such an interpretation.
Dr. Stewart next cites Ito International Corp. v. Prescott, Inc.,[29] and Rutter v. BX of Tri-Cities, Inc.,[30] for the proposition that Washington courts refuse to enforce contractual clauses that deprive investors of statutory remedies. Those cases are distinguishable. In Ito, the court declined to enforce provisions that waived protections of the WSSA in favor of foreign law governing securities transactions.[31] And in Rutter, the court refused to enforce a provision that adopted California law and waived the protections of the Washington Franchise Investment Protection Act.[32] The Subscription Agreement here did not require Dr. Stewart to assent to foreign law, or waive any right to sue under the WSSA.
Similarly in Special Transp. Servs., Inc. v. Balto,[33] the plaintiff signed an agreement limiting the amount he could recover for a securities law violation. The court decided the provision was unenforceable.[34] Here, the Subscription Agreement's provisions did not limit Dr. Stewart's recovery under the WSSA.
The anti-reliance provision in the Locate Offering Memorandum did not violate the WSSA's anti-waiver provision and is enforceable.
Dr. Stewart next argues that the disclaimers cannot apply to omissions of material fact. We also disagree with this contention.
He bases this argument, in part, on the view that disclaimers equate to waiver of the protections of the WSSA. We already dispensed with this argument in our preceding discussion.
The other part of this argument is based on state case authority that indicates that a rebuttable presumption of reliance applies when a material omission is at issue. Based on Morris v. International Yogurt,[35] Dr. Stewart contends that his disclaimers cannot apply to bar recovery because he is presumed to have relied on the omissions  all of which relate to Steiner's role in the transaction as opposed to the investment itself. We find this argument unpersuasive.
Morris was an action in which purchasers of a franchise sought damages from the franchisors for alleged violations of the Franchise Investment Protection Act.[36] One of the issues was whether there was a violation of FIPA by the failure to disclose that certain yogurt mix was available to non-franchisees as well as to franchisees.[37] The court determined that this information was material.[38] It then went on to hold that in such a case, a rebuttable presumption of reliance in the case of nondisclosure arises because of the difficulty of proof, using the rule 10b-5 analysis from federal cases as a guide.[39]
Dr. Stewart maintains that we should use the Morris analysis and hold that disclaimers *927 cannot bar the assertion of a claim of an omission of a material fact. Steiner does not address the point. And Locate and Crowson argue that we need not reach the issue because none of the alleged omissions were material to Dr. Stewart's investment decision.
Morris is distinguishable. First, the state supreme court did not have before it the question of the effect of non-reliance clauses in a subscription agreement. Thus, the court did not have occasion to address the precise issue now before us. Second, the rationale for the rule the court adopted in that case was to address proof problems by a securities case plaintiff who contends there was nondisclosure of a material fact. In contrast, we have a separate question: what effect should be given to written proof that a securities plaintiff has not relied on oral representations and has relied only on an offering memorandum. These distinct questions make application of the Morris principles far less significant if indeed they have any application to this situation. For these reasons, we are unpersuaded by the contention that the disclaimers before us cannot apply to alleged material omissions in a state securities case.

Other Factors Affecting Reasonable Reliance
We are mindful of the admonition that our state securities laws are to be interpreted liberally to achieve the desired effect of protecting investors.[40] Thus, the fact that one signs a non-reliance provision in a subscription agreement is not necessarily dispositive. Rather, it is appropriate to consider other relevant factors in making a determination whether one reasonably relies on representations or omissions in connection with the sale of a security.[41]
Jackvony lists those other factors that we believe are appropriate to consider in making this determination. They are (1) the sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.[42]
Here, the first non-dispositive factor is that Dr. Stewart is a sophisticated investor with expertise in financial and securities matters. There was no long standing business or personal relationship between Locate and Dr. Stewart, as required by the second factor. There was a prior relationship between Dr. Stewart and Prudential, the broker. There was no fiduciary relationship, as required by the fourth factor. As to the eighth factor  the generality or specificity of the alleged misrepresentations  there were specific matters on which Dr. Stewart claims he relied.
As to the third factor  access to the relevant information  Dr. Stewart takes the position that he did not have access to information regarding the misrepresentations or omissions. This may be true, but it is not dispositive. The same applies to the fifth factor  concealment of the alleged fraud. And Dr. Stewart maintains that he did not initiate the transaction. Whether he sought to expedite it is unclear.
Finally, Dr. Stewart argues that reliance cannot be determined on summary judgment because it involves the examination of numerous factors. While reliance requires examination of relevant factors, we reject the contention that such examination cannot be done in a summary judgment motion.
We need only cite to Jackvony and the cases we have already discussed to support the proposition that examination and resolution of the relevant factors can be done in a summary judgment motion. We have done so here.
*928 We hold that this record demonstrates that Dr. Stewart has failed to overcome the showing that he did not reasonably rely on the oral representations or omissions in connection with the sale of stock. His Subscription Agreement expressly states that he did not rely on any oral representations and relied solely on the Memorandum. And the other relevant factors affecting evaluation of reliance show that he did not reasonably rely on the matters he identified to attempt to withstand the summary judgment motions.

EQUITABLE ESTOPPEL DEFENSE
Dr. Stewart also asserts that equitable estoppel is unavailable to persons who violate the WSSA. Steiner, on the other hand, contends that such a defense is available. Because we conclude that Dr. Stewart did not reasonably rely on the matters he asserts, we need not resolve this dispute in this opinion.

"CONTROL PERSON" AND RESPONDEAT SUPERIOR
Dr. Stewart argues that Prudential is liable under the WSSA as a "control person" of Steiner. Moreover, he asserts that Prudential is also liable for Steiner's actions under agency principles, the common law doctrine of respondeat superior. Based on these statutory and common law theories, he argues that the trial court erroneously granted summary judgment in favor of Prudential. We hold that the grant of summary judgment was not reversible error.
We first note that Dr. Stewart's claim in his amended complaint was limited to alleged violation of the WSSA. He did not plead respondeat superior or any other common law claims against Prudential or any other defendant. In his opposition to the summary judgment motion of Prudential, he asserted summary judgment was barred, in part, by agency, the common law doctrine of respondeat superior. Prudential's reply neither moves to strike nor otherwise addresses this part of Dr. Stewart's arguments. More importantly, the court's order granting summary judgment listing the documents the judge considered includes Dr. Stewart's reply, but does not exclude the discussion concerning agency.
Both sides have fully briefed the respondeat superior issue and none has asserted any prejudice in our consideration of that particular claim. Accordingly, we consider it to promote justice and facilitate a decision on the merits.[43]
The provision of the WSSA at issue is RCW 21.20.430(3), which states:
(3) Every person who directly or indirectly controls a seller or buyer liable under subsection (1) or (2) above, every partner, officer, director or person who occupies a similar status or performs a similar function of such seller or buyer, every employee of such a seller or buyer who materially aids in the transaction, and every broker-dealer, salesperson, or person exempt under the provisions of RCW 21.20.040 who materially aids in the transaction is also liable jointly and severally with and to the same extent as the seller or buyer, unless such person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.
Dr. Stewart emphasizes in his brief the first part of the above statute,[44] which deals with control of a "seller," in his claim against Prudential. The claim appears to be that Prudential is a control person under the WSSA because analogous federal securities law makes brokers "controlling persons." We note the WSSA and the analogous federal statute are worded differently.[45]
*929 Dr. Stewart relies heavily on federal case authority construing federal securities statutes that parallel the WSSA. Specifically, he relies on Hollinger v. Titan Capital Corp.,[46] for the proposition that "Prudential (a broker-dealer) is a control person of Steiner (a registered financial advisor/stockbroker) as a matter of law." He also relies on that case for the proposition that controlling person liability under the federal securities statutes was not intended to supplant the application of agency principles in securities cases.[47]
Prudential correctly acknowledges that the Ninth Circuit in Hollinger, established a general rule that broker-dealers are "controlling persons" with respect to their registered representatives.[48] But the case went on to state:
To summarize, a broker-dealer controls a registered representative for the purposes of § 20(a). By recognizing this control relationship, we do not mean that a broker-dealer is vicariously liable under § 20(a) for all actions taken by its registered representatives. Nor are we making the broker-dealer the "insurer" of its representatives, which is a result we rejected in Christoffel [v. E.F. Hutton & Co., 588 F.2d 665 (9th Cir.1978)] as going beyond the scope of the vicarious liability imposed upon a broker-dealer by § 20(a). The mere fact that a controlling person relationship exists does not mean that vicarious liability necessarily follows. Section 20(a) provides that the "controlling person" can avoid liability if she acted in good faith and did not directly or indirectly induce the violations. By making the good faith defense available to controlling persons, Congress was able to avoid what it deemed to be an undesirable result, namely that of insurer's liability, and instead it made vicarious liability under § 20(a) dependent upon the broker-dealer's good faith.[49]
Prudential argues there were no genuine issues of material fact and it was entitled to judgment as a matter of law under the WSSA, arguing that the mere fact of the employment relationship between Steiner and itself is not enough to impose liability. There are conflicting declarations from the respective sides on these issues.
We need not address further whether Prudential sustained its burden on summary judgment for either the statutory cause of action under the WSSA or the common law claim under respondeat superior. We have already analyzed in this opinion why Steiner is not liable under the WSSA for the claims that Dr. Stewart makes. It is difficult to see why Prudential would be liable under either the WSSA or a common law theory of respondeat superior absent liability of Steiner, its employee. In any event, Dr. Stewart has failed to provide any reason why such liability of Prudential would exist in the absence *930 of liability of Steiner. Accordingly, we conclude that the grant of summary judgment of dismissal to Prudential was not reversible error.
We affirm the summary judgment orders.
ELLINGTON, J., and BECKER, J., concur.
NOTES
[1] Hines v. Data Line Systems, Inc., 114 Wash.2d 127, 134, 787 P.2d 8 (1990); RCW 21.20.010(2).
[2] Steiner died in 2003. We hereby grant the motion for substitution of parties and the Estate of George Steiner is hereby substituted for George Steiner. Nevertheless, we shall refer to both the original defendant and the substituted party, as the context requires, as "Steiner" throughout this opinion.
[3] Locate Networks, Inc. was originally named Loc8.net, Inc., but its name was changed to Locate Networks, Inc. in September 2000. We shall refer to the corporation as "Locate."
[4] Trimble v. Washington State University, 140 Wash.2d 88, 93, 993 P.2d 259 (2000).
[5] Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-554, 91 L.Ed.2d 265 (1986)).
[6] Trimble, 140 Wash.2d at 92, 993 P.2d 259.
[7] Hines, 114 Wash.2d at 134, 787 P.2d 8; RCW 21.20.010(2).
[8] RCW 21.20.010; Douglass v. Stanger, 101 Wash.App. 243, 2 P.3d 998 (2000).
[9] Dr. Stewart contends mere reliance, not reasonable reliance, on a misrepresentation or an omission is sufficient under the WSSA. That view appears to be at odds with the relevant case law, and we reject it. See Clausing v. DeHart, 83 Wash.2d 70, 73, 515 P.2d 982 (1973) (adopting the objective view of a material fact as "a fact to which a reasonable [person] would attach importance in determining [his/her] choice of action in the transaction in question") (emphasis added).
[10] (Emphasis added.)
[11] (Emphasis added.)
[12] 213 F.3d 381 (7th Cir.2000).
[13] Rissman, 213 F.3d at 383.
[14] Rissman, 213 F.3d at 383.
[15] Rissman, 213 F.3d at 382.
[16] Rissman, 213 F.3d at 384.
[17] 873 F.2d 411 (1st Cir.1989) (Holding the investor could not have reasonably relied upon alleged misrepresentation by a corporation's employees where a written agreement and plan of reorganization specifically provided that it represented the entire agreement between investor and the corporation, and superseded all prior agreements and understandings, both written and oral.).
[18] 848 F.2d 1283 (D.C.Cir.1988) (Holding an integration clause in a stock option contract precluded a securities fraud claim based on representations made by the option holder before the contract was entered into.).
[19] Tirapelli v. Advanced Equities, Inc., 215 F.Supp.2d 964 (N.D.Ill.2002) (Holding investors bringing a 10(b) securities fraud action against a company could not have reasonably rely upon alleged representations when non-reliance and integration clauses in subscription documents precluded any reliance upon representations that were not set forth in subscription documents.).
[20] 361 F.2d 260 (1st Cir.1966).
[21] Rogen, 361 F.2d at 260.
[22] Rogen, 361 F.2d at 267-68.
[23] Rogen, 361 F.2d at 268.
[24] 91 F.3d 337, 343-44 (2nd Cir.1996).
[25] Harsco, 91 F.3d at 343-44.
[26] Harsco, 91 F.3d at 343.
[27] Harsco, 91 F.3d at 344.
[28] (Emphasis in original.)
[29] 83 Wash.App. 282, 921 P.2d 566 (1996).
[30] 60 Wash.App. 743, 806 P.2d 1266 (1991).
[31] Ito, 83 Wash.App. at 288-89, 921 P.2d 566.
[32] Rutter, 60 Wash.App. at 746-47, 806 P.2d 1266.
[33] 325 F.Supp. 1185 (D.Minn.1971).
[34] Special Transp., 325 F.Supp. at 1187.
[35] 107 Wash.2d 314, 729 P.2d 33 (1986).
[36] Morris, 107 Wash.2d at 317, 729 P.2d 33.
[37] Morris, 107 Wash.2d at 324, 729 P.2d 33.
[38] Morris, 107 Wash.2d at 326, 729 P.2d 33.
[39] Morris, 107 Wash.2d at 330, 729 P.2d 33.
[40] Hoffer v. State, 113 Wash.2d 148, 152, 776 P.2d 963 (1989).
[41] Rissman, 213 F.3d at 386-87 (Rovner, J. concurring).
[42] Jackvony, 873 F.2d at 416.
[43] RAP 1.2.
[44] (Emphasizing selected portions of the statute and citing provisions in Hines, 114 Wash.2d at 135-36, 787 P.2d 8, establishing the test for a control person of a seller).
[45] The controlling person doctrine is based on section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) and section 15 of the Securities Act of 1933, 15 U.S.C. § 77 o. Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be liable jointly and severally with and to the same extent as such controlled person ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a) (1982). Section 15 provides: "Every person who, by or through stock ownership, agency, or otherwise, ... controls any person liable under... this title, shall also be liable jointly and severally with and to the same extent as such controlled person ... unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. § 770 (1982).

The analogous provision under the WSSA, RCW 21.20.430(3) states:
(3) Every person who directly or indirectly controls a seller or buyer liable under subsection (1) or (2) above, every partner, officer, director or person who occupies a similar status or performs a similar function of such seller or buyer, every employee of such a seller or buyer who materially aids in the transaction, and every broker-dealer, salesperson, or person exempt under the provisions of RCW 21.20.040 who materially aids in the transaction is also liable jointly and severally with and to the same extent as the seller or buyer, unless such person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.
[46] 914 F.2d 1564 (9th Cir.1990).
[47] Hollinger, 914 F.2d at 1577.
[48] Hollinger, 914 F.2d at 1574-575.
[49] Hollinger, 914 F.2d at 1575.