
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| YANLU LIU and AI HUA PAN, husband and wife, residing in King County, Washington; PENG ZHANG and ZHONGYUAN PAN, husband and wife, residing in Ontario, Canada, | ) ) ) ) ) ) | No. 76576-1-I |
| Respondents, | ) ) | |
| v. | ) ) ) | |
| GREAT OCEAN CAPITAL HOLDING, LLC, a Washington limited liability company; HUY YING CHEN and XUE PING WANG, husband and wife, residing in Washington state; | ) ) ) ) ) ) | UNPUBLISHED OPINION <br><br> FILED: October 15, 2018 |
| Appellants. | ) ) ) | |

VERELLEN, J. — Great Ocean Capital Holding, LLC challenges the trial court's jurisdiction and authority to enter judgment on Zhongyuan Pan's claim under the Washington State Securities Act, chapter 21.20 RCW (WSSA). Great Ocean fails to establish the trial court lacked subject matter jurisdiction or either field or conflict preemption applies.

Great Ocean also argues the trial court erred in granting summary judgment in Pan's favor but fails to establish the existence of a genuine issue of material fact. Great Ocean's other challenges to the trial court's orders striking Great

Ocean's answer and determining Pan was entitled to rescission of her investment are similarly without merit.

Therefore, we affirm.

FACTS

Great Ocean is a United States Citizen and Immigration Service designated regional center for purposes of the EB-5 Immigrant Investor Program. Appellants Huy Ying Chen and Xue Ping Wang, husband and wife, own a majority interest in Great Ocean. Respondents Yanlu Liu and Ai Hua Pan, husband and wife, own a minority interest. Yanlu Liu and Ai Hua Pan are the parents of Zhongyuan Pan.

Pan invested $519,500 in Great Ocean for the purpose of obtaining a visa through the EB-5 Program. The EB-5 Program allows foreign investors and their families to obtain residency in the United States.

In November 2015, Pan and her parents filed a lawsuit against Great Ocean for breach of contract, fraudulent and negligent misrepresentation, violation of the WSSA, violation of the Consumer Protection Act, chapter 19.86 RCW, breach of fiduciary duty, and accounting.[1]

The trial court entered orders granting partial summary judgment on Pan's WSSA claim, striking Great Ocean's answer and affirmative defenses, and entering findings of fact, conclusions of law, and judgment on Pan's WSSA claim. The principal amount of judgment was $519,500 for Pan's initial investment.

---

[1] Respondents' claims for breach of contract, fraud, and violation of the Consumer Protection Act were submitted for arbitration. Following partial summary judgment on Pan's WSSA claim, respondents voluntarily dismissed all other claims.

Great Ocean appeals.

## ANALYSIS

### I. Jurisdiction

Great Ocean contends the trial court lacked subject matter jurisdiction to render judgment in this case.

We review whether a court has subject matter jurisdiction de novo.[2] "'A judgment entered by a court that lacks subject matter jurisdiction is void.'"[3]

"As courts of general jurisdiction, superior courts have long had the 'power to hear and determine all matters, legal and equitable, . . . except in so far as these powers have been expressly denied.'"[4] In light of this broad grant of subject matter jurisdiction, "courts may only find a lack of jurisdiction under compelling circumstances, such as when it is explicitly limited by the Legislature or Congress."[5]

Here, the trial court decided Pan's WSSA claim. Washington State superior courts have subject matter jurisdiction to decide WSSA claims. And Great Ocean fails to offer any compelling authority that the trial court lacked subject matter jurisdiction to render judgment on Pan's WSSA claim. Oddly, Great Ocean cites to

---

[2] Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 314, 76 P.3d 1183 (2003).

[3] Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011) (quoting Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 541, 886 P.2d 189 (1994)).

[4] In re Marriage of Major, 71 Wn. App. 531, 533, 859 P.2d 1262 (1993) (alteration in original) (quoting State ex rel. Martin v. Superior Court, 101 Wash. 81, 94, 172 P. 257 (1918)).

[5] Id. at 534.

a federal regulation addressing preemption of state laws in the area of chemical facility anti-terrorism standards.[6] Great Ocean makes the conclusory argument that a state trial court does not have jurisdiction over matters touching on immigration. But this is not an immigration case, and Great Ocean cannot establish lack of subject matter jurisdiction simply because of Great Ocean's status as a United States Citizen and Immigration Service designated regional center or the nature of the EB-5 program.

The trial court did not lack jurisdiction to render judgment against Great Ocean on Pan's WSSA claim.

II. Preemption

Great Ocean argues the trial court's authority to enter judgment on Pan's WSSA claim is preempted by federal law.

A state law can be preempted in two ways: (1) field preemption (express or implied) or (2) conflict preemption.[7] "If Congress indicates an intent to occupy a given field (explicitly or impliedly), any state law falling within that field is preempted; even if Congress has not indicated an intent to occupy a field, state law is still preempted to the extent it would actually conflict with federal law."[8] "Such a conflict occurs (1) when compliance with both laws is physically

---

[6] See Br. of Appellant at 22-23 (citing 6 C.F.R. § 27.405).

[7] Inlandboatmen's Union of the Pac. v. Dep't of Transp., 119 Wn.2d 697, 701, 836 P.2d 823 (1992).

[8] Id.

4

impossible, or (2) when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[9]

Here, Great Ocean fails to establish field preemption. The federal statutes cited by Great Ocean do not expressly or impliedly address a Washington State superior court's authority to hear a WSSA claim.[10]

As to conflict preemption, Great Ocean argues the return of Pan's investment stands as an obstacle to the purpose of the EB-5 program to foster foreign investment and job creation. But Great Ocean fails to cite any compelling authority to support this argument.

Additionally, under 15 U.S.C. § 77r(c)(1)(A)(i), states retain the authority "under the laws of such [s]tate to investigate and bring enforcement actions, in connection with securities or securities transactions . . . with respect to—fraud or deceit."

We conclude Pan's WSSA claim is not preempted by federal law.

III.  Partial Summary Judgment—WSSA Claim

Great Ocean contends the trial court erred in granting partial summary judgment on Pan's WSSA claim.

We review an order granting summary judgment de novo.[11] "The moving party has the burden of showing that there is no genuine issue as to any material

---

[9] Id. at 702.

[10] See Br. of Appellant at 27 (citing 15 U.S.C. § 771(a)(1) (Federal Energy Administration Comptroller General, powers and duties)).

[11] CR 56(c); Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

5

fact."[12] A response to a summary judgment motion "'must set forth specific facts showing that there is a genuine issue for trial.'"[13]

"To establish liability under the WSSA, the purchaser of a security must prove that the seller and/or others made material misrepresentations or omissions about the security, and the purchaser relied on those misrepresentations or omissions."[14]

On May 6, 2016, Pan filed a motion for partial summary judgment on her WSSA claim. Specifically, Pan requested "an Order holding that: (1) The statements in the Private Placement Memorandum ("PPM") were materially misleading; (2) That Plaintiffs' reliance on the statements made in the PPM was reasonable."[15]

The court addressed the two issues separately. On June 3, 2016, the trial court granted Pan's motion for partial summary judgment as to the first issue and determined Great Ocean's statements in the PPM that it "had secured an [e]ighty (80) year lease with the Port of Longview were material, false, and misleading."[16] On September 27, 2016, the court granted the motion as to the second issue and

---

[12] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007).

[13] State v. Mandatory Poster Agency, Inc., 199 Wn. App. 506, 517, 398 P.3d 1271 (quoting CR 56(e)), review denied, 189 Wn.2d 1021 (2017).

[14] Stewart v. Estate of Steiner, 122 Wn. App. 258, 264, 93 P.3d 919 (2004) (citing RCW 21.20.010(2)).

[15] Clerk's Papers (CP) at 414-15.

[16] CP at 2062.

determined "Pan [r]easonably relied on materially false and misleading statements set forth in the PPM."[17]

"A 'material fact' is one 'to which a reasonable [person] would attach importance in determining his [or her] choice of action in the transaction in question.'"[18] A "misrepresentation" is a false statement regarding an existing fact.[19]

Here, the PPM provides information about Great Ocean's investor-funded projects. At issue are the statements contained in the PPM concerning a lease with the Port of Longview and Great Ocean's plans to build a cold storage facility:

> The Project currently consists of approximately 65 acres of land for long term 80 years lease (40 years plus 40 years right's extension) from Port of Longview with 500,000 Sq. Ft. warehouse for further project re-development, that is entitled and ready for the construction of 500,000 Sq. Ft packinghouse and CA (Cold Atmospheres) cold-storage warehouse at Port of Longview, Washington.[20]

The PPM also describes the packinghouse as "shovel ready."[21] But in response to interrogatories, Great Ocean admitted that "Great Ocean and Huy Ying Chen did not enter into a contractually binding lease agreement with the Port of Longview."[22] Despite this response, Great Ocean argues the statements in the PPM were not

---

[17] CP at 1162.

[18] Guarino v. Interactive Objects, Inc., 122 Wn. App. 95, 114, 86 P.3d 1175 (2004) (alterations in original) (quoting Aspelund v. Olerich, 56 Wn. App. 477, 481-82, 784 P.2d 179 (1990)).

[19] Havens v. C & D Plastics, Inc., 124 Wn.2d 158, 182, 876 P.2d 435 (1994) (negligent misrepresentation claim).

[20] CP at 57.

[21] CP at 52.

[22] CP at 435.

false because they had in fact entered into a "pre-contract" with the Port of Longview.

Great Ocean's briefing rests on semantics rather than meaningful authority or argument. Great Ocean cites minutes from a February 26, 2013 meeting between Great Ocean and representatives from the Port of Longview and argues the meeting minutes constitute a "pre-contract."[23] The meeting minutes memorialize that "[Port of Longview] agree lease maximum years for 80 years."[24] But the minutes also state "[Port of Longview] will provide a fair lease price," clear evidence that Great Ocean had not yet secured an enforceable lease. At the February 26, 2013 meeting, the lease was discussed, not finalized.

As to materiality, Pan submitted a declaration stating, "If my father and I knew the statement from PPM and Chen were not true, we would not invest money into the project."[25]

Great Ocean fails to establish the existence of a genuine issue of material fact as to whether the statements in the PPM were materially misleading.

As to the second issue, whether Pan reasonably relied on the statements, under the WSSA, the investor must also show the reliance was reasonable "'under the surrounding circumstances.'"[26] In general, whether reliance is reasonable is a

---

[23] CP at 1208.

[24] CP at 1212.

[25] CP at 2078.

[26] Federal Home Loan Bank v. Barclays Capital, Inc., 1 Wn. App. 2d 551, 565, 406 P.3d 686 (2017) (quoting FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 868, 309 P.3d 555 (2013), aff'd, 180 Wn.2d 954 (2014)), review granted, 190 Wn.2d 1018 (2018).

factual inquiry.[27] But "if reasonable minds could reach only one conclusion, summary judgment on this element is proper."[28]

To determine whether reliance is reasonable, we apply the factors from Stewart v. Estate of Steiner.[29] No individual factor is necessarily dispositive.[30] "The factors are:

'(1) the sophistication and expertise of the plaintiff in financial and securities matters, (2) the existence of longstanding business or personal relationships; (3) access to the relevant information, (4) the existence of a fiduciary relationship, (5) concealment of the fraud, (6) the opportunity to detect the fraud, (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction, and (8) the generality or specificity of the misrepresentations.'[31]

In opposition to Great Ocean's motion for summary judgment, Pan submitted a declaration that she "viewed Captain Chen as my uncle."[32] She also stated, "Captain Chen was a family friend and at that time I did not have any reason to believe what he told us was not the truth."[33] Pan acknowledged that she did some translating work for Great Ocean, but she stated she "did not create the content of the documents."[34] "Ultimately, while I may have had access to some of Great Ocean's records, I did not have complete access to all of its records."[35]

---

[27] Id.

[28] Id.

[29] 122 Wn. App. 258, 93 P.3d 919 (2004).

[30] Barclays, 1 Wn. App. 2d at 568 (citing Stewart, 122 Wn. App. at 274).

[31] Id. (quoting Stewart, 122 Wn. App. at 274).

[32] CP at 2079.

[33] Id.

[34] CP at 2081.

[35] CP at 2082.

On appeal, Great Ocean does not address the Stewart factors and does not specifically contend Pan failed to establish reasonable reliance. Rather, Great Ocean attempts to address reasonable reliance by arguing that Pan is barred from recovery under WSSA due to her various misrepresentations. But the individual arguments concerning Pan's alleged misrepresentations are conclusory and speculative.[36]

First, Great Ocean argues Pan misrepresented her date of entry into the United States. Great Ocean speculates Pan had actual knowledge of the preliminary nature of the lease agreement because she happened to be in the United States at the time of the February 2013 meeting between Great Ocean and the Port of Longview. Great Ocean accurately cites Guarino v. Interactive Objects, Inc. for the proposition that actual knowledge would defeat a WSSA claim[37] but fails to present specific evidence to support the contention that Pan was present at the meeting.

Second, Great Ocean argues Pan misrepresented herself as a "sophisticated" and "accredited" investor in the subscription agreement she signed. In her declaration, Pan stated, "I did not have any reason to believe what [Chen] told us was not the truth" and "I assumed that Great Ocean had a lease."[38] Great Ocean contends these statements reveal Pan was not a sophisticated or

---

[36] See Boguch v. Landover Corp., 153 Wn. App. 595, 610, 224 P.3d 795 (2009)) ("a party resisting summary judgment cannot satisfy his or her burden of production merely by relying on conclusory allegations, speculative statements, or argumentative assertions").

[37] 122 Wn. App. 95, 113, 86 P.3d 1175 (2004).

[38] CP at 2079.

accredited investor because she "blindly invested $500,000.00 without conducting any due diligence."[39]  But Great Ocean provides insufficient citation to the record to establish a misrepresentation and insufficient citation to authority to establish that Pan's alleged misrepresentation bars recovery.  This conclusory argument is not persuasive.

Great Ocean fails to establish the existence of a genuine issue of material fact whether Pan's reliance on the statements in the PPM was reasonable.  As a result, we conclude the trial court did not err in granting Pan's motion for partial summary judgment on the WSSA claim.

IV.  Striking Answer

Great Ocean argues the trial court erred in striking its answer and affirmative defenses based on the failure to supplement its answers to discovery.

We review a motion to strike made in conjunction with a motion for summary judgment de novo.[40]

Before imposing a harsh discovery sanction, a trial court is required to consider the factors from Burnet v. Spokane Ambulance:

> A trial court may impose only the most severe discovery sanctions upon a showing that (1) the discovery violation was willful or deliberate, (2) the violation substantially prejudiced the opponent's ability to prepare for trial, and (3) the court explicitly considered less severe sanctions.[41]

---

[39] Br. of Appellant at 37.

[40] Southwick v. Seattle Police Officer John Doe, 145 Wn. App. 292, 297, 186 P.3d 1089 (2008).

[41] Teter v. Deck, 174 Wn.2d 207, 216-17, 274 P.3d 336 (2012) (citing Burnet v. Spokane Ambulance, 131 Wn.2d 484, 496-97, 933 P.2d 1036 (1997)).

"Findings regarding the Burnet factors must be made on the record."[42]

Here, the court sufficiently addressed the Burnet factors in its order striking defendants' answer and affirmative defenses entered on November 28, 2016.[43]

We conclude the trial court did not err in granting the motion to strike.

V. Judgment

Great Ocean challenges the trial court's award of damages, arguing that Pan's failure to make a demand under RCW 21.20.430 precludes any award of damages.

Under RCW 21.20.430(2):

Any person who buys a security in violation of the provisions of RCW 21.20.010 is liable to the person selling the security to him or her, who may sue either at law or in equity to recover the security, together with any income received on the security, upon tender of the consideration received, costs, and reasonable attorneys' fees, or if the security cannot be recovered, for damages. Damages are the value of the security when the buyer disposed of it, and any income received on the security, less the consideration received for the security, plus interest at eight percent per annum from the date of disposition, costs, and reasonable attorneys' fees.

"The unambiguous language of RCW 21.20.430(2) provides that a defrauded seller may sue for rescission to recover the security."[44]

---

[42] Id. at 217.

[43] The court determined the violation was willful, the refusal to provide discovery frustrated the ability to prosecute plaintiffs' claims, the court's use of monetary sanctions was ineffective, and striking portions of the answer was the least harsh effective remedy available.

[44] Helenius v. Chelius, 131 Wn. App. 421, 432, 120 P.3d 954 (2005).

Here, the trial court concluded, "The purpose and intent of the remedies set forth in RCW § 21.20.430 is rescission of the investment," and Pan was entitled to a return of her initial investment of $519,500.[45]

Great Ocean contends the trial court erred in determining Pan was entitled to rescission of her investment because she failed to demand a return of her investment prior to initiating her lawsuit.[46]

RCW 21.20.430(4)(b) provides:

No person may sue under this section if the buyer or seller *receives* a written rescission offer, which has been passed upon by the director before suit and at a time when he or she owned the security, to refund the consideration paid together with interest at eight percent per annum from the date of payment, less the amount of any income received on the security in the case of a buyer, or plus the amount of income received on the security in the case of a seller.[47]

Great Ocean fails to point to any evidence it issued a written rescission offer to Pan. Rather, Great Ocean argues Pan was not entitled to judgment because she never demanded return of her capital contribution. Great Ocean does not cite any authority to support the argument that Pan must make a demand before filing a lawsuit under the WSSA.

We conclude the trial court did not err in determining Pan was entitled to rescission and awarding a principal judgment amount of $519,500.

---

[45] CP at 1338.

[46] Although Great Ocean frames the issue in terms of the adequacy of the court's findings of fact, it is not a true sufficiency challenge but rather a restatement of Great Ocean's theory that Pan is not entitled to rescission.

[47] (Emphasis added.)

## VI. Motion to Strike

In Great Ocean's reply brief, Great Ocean renews its motion to strike respondents' brief.

On March 15, 2018, Great Ocean moved to strike respondents' brief and to remand to the trial court for RAP 9.11 proceedings. On April 5, 2018, Commissioner Neel denied the motion and directed Great Ocean to include such a motion in its briefing to the panel.

In the original motion, Great Ocean argued respondents improperly supplemented the record on appeal without complying with RAP 9.11. Great Ocean claimed the respondents improperly supplemented the record with evidence that Pan withdrew her EB-5 application and evidence that she demanded return of her investment prior to filing the lawsuit.

Because respondents have not complied with RAP 9.11, we decline to consider this evidence because it is not part of the record on appeal.[48] The absence of this evidence has no impact on the outcome of the merits of Great Ocean's appeal.

---

[48] Harbison v. Garden Valley Outfitters, Inc., 69 Wn. App. 590, 593-94, 849 P.2d 669 (1993) ("RAP 9.11 is a limited remedy under which this court may direct that additional evidence may be taken if all of the following six criteria are met: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.") (quoting RAP 9.11(a)).

## VII.  Fees on Appeal

Pan seeks fees on appeal under the subscription agreement and RAP 18.1.

"RAP 18.1(b) requires more than a bald request for attorney fees on appeal."[49]  The request must be accompanied by citation to authority, argument, and citation to the record.[50]

Here, Pan claims the subscription agreement contains a fee clause but provides no citation to the record identifying such a provision.[51]

We deny Pan's request for fees on appeal.

Therefore, we affirm.

WE CONCUR:

---

[49] Thweatt v. Hommel, 67 Wn. App. 135, 148, 834 P.2d 1058 (1992).

[50] Gardner v. First Heritage Bank, 175 Wn. App. 650, 677, 303 P.3d 1065 (2013).

[51] See In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (courts are not obligated "to comb the record" where counsel has failed to support arguments with citations to the record).